**BORON OIL COMPANY; Vito Cutrone, Sr.; Fonda Cutrone; Sharon Lewis, Plaintiffs–Appellees,**

v.

**Jack L. DOWNIE, in his official capacity as an employee of the United States Environmental Protection Agency, Defendant–Appellant.**

No. 88–3938.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1989.

Decided April 24, 1989.

Martin William Matzen (Roger J. Marzulla, Asst. Atty. Gen., Anne S. Almy, Washington, D.C., Daniel S. Goodman, U.S. Dept. of Justice, Land & Natural Resources Div., William A. Kolibash, U.S. Atty., Wheeling, W.Va., Donnell Nantkes, Office of Gen. Counsel, Philip Yeany, Asst. Regional Counsel, U.S.E.P.A., on brief) for defendant-appellant.

James F. Companion (Yolanda G. Lambert, Schrader, Stamp, Byrd, Byrum & Companion, Wheeling, W.Va., W. Dean De La Mater, De La Mater, Hagg & Bohach, Weirton, W.Va., on brief), for plaintiffs-appellees.

Before SPROUSE and CHAPMAN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

CHAPMAN, Circuit Judge:

In the matter before the Court, the plaintiffs seek to compel an employee of the Environmental Protection Agency ("EPA"), Jack L. Downie ("Downie"), to testify in a state court civil action, contrary to specific instructions of his agency superiors, concerning information acquired during the course of his official duties. We hold that the state court, and the federal district court on removal, lacked jurisdiction to compel the defendant to appear and testify in a state court action to which the government is not a party. Thus, we reverse the order of the district court.

### I.

The present dispute arose when, on August 17, 1987, and August 21, 1987, Downie was served with trial subpoenas to testify in a tort action pending in the Circuit Court of Brooke County, West Virginia. *Vito Cutrone, Sr., et al. v. Boron Oil Company*, Civil Action No. 83–C–149–Br. Downie was subpoenaed by both parties to testify about his investigation, as an EPA On-Scene Coordinator, of an alleged gasoline leak at a Boron Oil Company service station.

Although Downie initially consented to provide trial testimony subject to approval by his superiors and the EPA had cooperated in similar proceedings prior to this incident, one day before Downie's scheduled trial appearance in state court the Acting Regional Counsel for EPA Region 3 concluded that Downie's testimony "would not clearly be in the interest of the EPA." The EPA issued a written determination that Downie not be permitted to testify.

The Circuit Court of Brooke County denied EPA's motion to quash the two trial subpoenaes and directed Downie to testify. The EPA promptly removed the subpoena proceedings (but not the underlying civil action) to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1442(a). The district court held a hearing to ascertain the nature of Downie's employment, his involvement in the underlying tort action, and the extent to which his appearance as a witness would interfere with his official duties.

The district court held that removal was proper, pursuant to *North Carolina v. Carr*, 386 F.2d 129 (4th Cir.1967), and that its jurisdiction on removal included authority to review the EPA's decision to prohibit Downie from testifying. The district court made factual findings that none of the information sought from Downie is alleged to be privileged, that Downie's testimony is essential to the fair administration of justice in the civil action, that Downie is the most knowledgeable person available to give an unbiased, impartial account of the events giving rise to the tort action, and that the interference and inconvenience to Downie and the EPA resulting from his giving testimony would be minimal at best. The court also noted that prior to the present action it had been the EPA's policy to cooperate fully with private citizens regarding matters of this nature, that Downie had voluntarily consented to provide trial testimony subject only to approval by his superior, that there were no written reports prepared in connection with Downie's investigation of the alleged gas leak, and that the cost and expenses to Downie and the EPA resulting from Downie's trial testimony would be borne by the parties seeking his testimony.

In reaching its conclusion, the district court looked to the following "housekeeping" statute which provides the Congressional mandate to be followed by all departments seeking to invoke and apply regulations promulgated thereunder:

The head of an Executive department or military department may prescribe

regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301.

The EPA relied upon EPA Regulations promulgated at 40 C.F.R. § 2.401(c), Subpart C (1986), in denying Downie permission to testify. The regulations instruct:

> The purpose of this subpart is to ensure that employees' official time is used only for official purposes, to maintain the impartiality of EPA among private litigants, to ensure that public funds are not used for private purposes and to establish procedures for approving testimony or production of documents when clearly in the interests of EPA.

"[A]lthough § 301 does permit centralization of responsibility in a department head to claim a privilege," the district court concluded, "it clearly does not confer a privilege to withhold information from the public."

The district court similarly rejected the defense of sovereign immunity, holding that neither the United States nor the EPA were named parties, thus, "there is no relief sought or sued against the sovereign in this case."

The district court ordered Downie to give testimony in the state court and required that the timing of his appearance make accommodation for his work schedule and that the appellees, the private litigants in the underlying civil action, bear the cost of his appearance.

## II.

The EPA seeks to quash the subpoenaes on the ground that it is not subject to a subpoena issued by a state or local court, with respect to actions to which it is not a party, in the absence of a waiver of sovereign immunity. The EPA also argues that the subpoenaes must be quashed because they do not comply with the internal EPA regulations concerning state court subpoenaes, authorized by 5 U.S.C. § 301 and codified at 40 C.F.R. § 2.401(c).

## A.

■ It is well established that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity. *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949); 3A Moore's Federal Practice ¶ 19.15. Downie's refusal to testify was at the behest of his EPA superior, the Acting Regional Counsel for Region 3. The EPA decision was made pursuant to regulations set forth at 40 C.F.R. § 2.401. These regulations provide, *inter alia*, that an employee of the EPA may testify in response to a subpoena only to the extent expressly authorized by the agency.

The Supreme Court has specifically recognized the authority of agency heads to restrict testimony of their subordinates by this type of regulation. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In *Touhy*, the Supreme Court ruled that a subordinate official of the Justice Department could not be held in contempt for refusing, in a habeas corpus proceeding by a state prisoner, to obey a subpoena *duces tecum* when his compliance had been prohibited by an order of a superior department official acting pursuant to valid federal regulations governing the release of official documents. As in the case *sub judice*, the government was not a party to the underlying action. The regulations in *Touhy* were promulgated under the statutory predecessor of the current "housekeeping" statute, 5 U.S.C. § 301.

*Touhy* is part of an unbroken line of authority which directly supports Downie's contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations. The district court clearly departed from this line of

cases. In *Swett v. Schenk*, 792 F.2d 1447, 1451–52 (9th Cir.1986), the court affirmed the trial court's dismissal of a state court's contempt proceeding against a National Transportation Safety Board's investigator who had, pursuant to valid NTSB regulations, submitted to deposition but declined to testify about other matters. The government, as in the case at bar, was not a party to the underlying action, and the litigant sought the investigator's testimony for his expert knowledge rather than for a recitation of agency records. *See also Reynolds Metals Co. v. Crowther*, 572 F.Supp. 288, 290–91 (D.Mass.1982) (federal district court dismissed contempt proceeding which would have compelled OSHA investigators to testify in private civil action in state court contrary to agency's instructions under valid agency regulations); *Smith v. C. R. C. Builders Co., Inc.*, 626 F.Supp. 12, 14 (D.Colo.1983) (in a case removed to the federal court to hear contempt proceedings, the district court held that an OSHA official could not be compelled to disobey a direct order from an agency superior not to disclose certain information in a state wrongful death action, nor be punished for his adherence to the mandate of valid department regulations).

The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business. *Reynolds Metals*, 572 F.Supp. at 290. Because of the nature of the duties it exercises and programs it administers, the EPA is particularly vulnerable to the demands of private parties seeking information acquired as a result of official investigations concerning incidents such as that in the case *sub judice*. If EPA On–Scene Coordinators were routinely permitted or compelled to testify in private civil actions, significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments.

### B.

The district court exceeded its jurisdiction upon removal, which it derived solely from that of the state court, in compelling Downie to testify contrary to the direction of the EPA. The doctrine of sovereign immunity precludes the state court—and the federal court which gained limited jurisdiction upon removal—from exercising jurisdiction to compel Downie to testify contrary to EPA instructions, and also denies it the authority to review and set aside the EPA's decision and the federal regulations under which it is made. Significantly, the court in *Swett v. Schenk, supra,* noted that "the *Touhy* doctrine is jurisdictional" and the state court lacked jurisdiction to compel the investigators to testify, and the federal court itself similarly lacked such power since it "acquired no jurisdiction on removal." *Swett*, 792 F.2d at 1451–52.

■ The jurisdiction of a federal district court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court, and the federal court acquires none upon removal. *Arizona v. Manypenny*, 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1665 n. 17, 68 L.Ed.2d 58 (1981). The Supreme Court has instructed that "jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction." *Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939).

The EPA has not waived its immunity, thus the state court (and the federal court on removal) lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction. The district court found that the doctrine of sovereign immunity was inapplicable because the government was not a party to the underlying action and the subpoenas were directed to Downie personally and not in his capacity as a federal employee of the EPA.

■ Even though the government is not a party to the underlying action, the nature of the subpoena proceeding against a federal employee to compel him to testify

about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding "interfere[s] with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). The subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign. We have previously instructed that suits against federal employees may be barred by the doctrine of sovereign immunity where the effect of the suit falls upon the government:

> It is not necessary that the United States be denominated as a party. An action against a federal agency or official will be treated as an action against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act."

*Portsmouth Redevelopment & Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.1983), quoting *Dugan v. Rank,* 372 U.S. at 620, 83 S.Ct. at 1006. Clearly, Downie's appearance at the state court proceeding is sought because of the knowledge he acquired in the course of his official duties.

The doctrine of sovereign immunity has been applied in federal courts in situations analogous to the case at bar. *See, e.g., Environmental Enterprises, Inc. v. EPA,* 664 F.Supp. 585, 586 (D.D.C.1987) ("As to sovereign immunity, there is obvious merit to the argument that federal officers should not be subpoenaed to testify in state courts proceedings of which they are not parties without their approval." Thus, where EPA had not waived sovereign immunity, subpoena to testify in state civil action was quashed.); *Reynolds Metals Co. v. Crowther,* 572 F.Supp. 288, 290–91 (D.Mass.1982) (federal official's refusal to testify in response to state court subpoena protected by privilege of sovereign immunity); *United States v. McLeod,* 385 F.2d 734, 752 (5th Cir.1967) (federal officers could not be subpoenaed to testify before a state grand jury).

The principle of federal supremacy reinforces the protection of sovereign immunity in the case at bar. The assertion of state court authority to override the EPA's *Touhy* regulations clearly violates the Constitution's Supremacy Clause. First, Congress has expressly limited Administrative Procedure Act review to the federal courts, and a state court's assertion of the power of judicial review over federal agencies directly contravenes 5 U.S.C. § 702. Second, properly promulgated agency regulations implementing federal statutes have the force and effect of federal law which state courts are bound to follow. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714–15, 60 L.Ed.2d 208 (1979). The action of a state court to compel an official of a federal agency to testify contrary to the agency's duly enacted regulations clearly thwarts the purpose and intended effect of the federal regulations. Such action plainly violates both the spirit and the letter of the Supremacy Clause.

This Court is aware that the facts of this case suggest that the EPA could, as the district court ordered, comply with the state court processes without undermining the immediate purposes for the EPA regulations. The district court suggests that this leads irresistibly to the conclusion that the EPA's action was "arbitrary and capricious and unreasonable." This contention ignores, however, the important fact that the EPA was acting pursuant to duly promulgated regulations and the concerns which motivated the agency may have extended beyond the burdens represented by Downie giving testimony in this particular case. The agency has a valid and compelling interest in keeping its On–Scene Coordinators, as a class, free to conduct their official business without the distractions of testifying in private civil actions in which the government has no genuine interest. Indeed, it is plausible that Downie has not been burdened in the past by requests to testify in private state court actions be-

**72**

cause the EPA has successfully and steadfastly resisted previous attempts to compel its employees to testify. The current explosion in environmental litigation must surely give warning to the EPA that a strict adherence to its internal regulations is essential if it is to be successful in preventing its expert employees from being targeted as potential witnesses in private actions.

For the foregoing reasons, the order of the district court is

REVERSED.