**Daniel J. EDWARDS, Petitioner–Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Respondent–Appellee.**

No. 93–3941.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1994.

Decided Dec. 22, 1994.

Stephen E. Eberhardt (argued), Chicago, IL, Robert H. Farley, Jr., Naperville, IL, for petitioner-appellant.

James A. Lewis, Asst. U.S. Atty. (argued), Springfield, IL, for U.S. Dept. of Justice.

Michael A. Hurst, Office of the Atty. Gen., Criminal Appeals Div., Chicago, IL, for State of Ill.

Before GODBOLD,* WOOD, Jr., and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, Daniel Edwards, seeks to compel the Department of Justice to produce certain "Nightstalker"[1] surveillance reports allegedly compiled when the Illinois State Police and the FBI were investigating Edwards. Edwards argues the information is vital to his state post-conviction hearing. The district court granted the Department's motion to dismiss the state court show cause order proceeding and to quash the state court subpoenas because the state court did not have jurisdiction to enforce the subpoenas. The district court held the demand for the exempted federal material was contrary to valid agency regulations. Edwards appeals.

I.

Edwards was convicted in state court of the kidnapping and murder of Stephen Small, a prominent local businessman, who owned local Kankakee news media. Mr. Small and his family, his wife and three children ages fourteen, and ten (twins), lived in rural Kankakee, Illinois. On September 2, 1987, at approximately 12:30 a.m., Mr. Small received a telephone call at his home from a man who identified himself as a member of the Kankakee police force. The caller told Mr. Small that his business had been broken into and he was needed at his office immediately. Mr. Small without delay left for his office.

At approximately 3:30 a.m., Mrs. Small received a telephone call from an unidentified male who told her that her husband had been kidnapped and demanded a ransom of $1 million. Mrs. Small also heard the voice of her husband telling her he was handcuffed

inside a box buried under a few feet of sand. Mrs. Small then contacted family members and the Kankakee police department. FBI agents were also notified of the kidnapping.

Later that evening around 5:00 p.m., Mrs. Small received a second phone call from the unidentified man who relayed directions for the delivery of the ransom money. The FBI had placed a tracer on the telephone, and traced the call to a telephone booth at a service station in Aroma Park, Kankakee.

In the interim, the FBI was setting up surveillance of the area to which the first ransom call had been traced. At 11:28 p.m. that evening, Mrs. Small received another ransom call from the same man, but from a different telephone booth in Aroma Park. FBI agents arrived at that booth and observed Edwards at the phone booth with his vehicle. The agents recorded the license plate and ran a check. The agents also observed a young, blonde woman with the defendant, who was subsequently determined to be Edwards's girlfriend, Nancy Rish. The agents attempted to follow the defendant in his vehicle, but quickly lost sight of the car.

Around 11:50 p.m. another call was placed to the Small home, but was not recorded. The call had originated from a phone booth in Kankakee. Agents then spotted the defendant's vehicle driving from Kankakee toward Aroma Park. The license plate check revealed that the car belonged to Nancy Rish. This information was passed along to the police and FBI. An officer familiar with Rish told the other officials that Rish was Edwards's girlfriend, and that they lived together at 756 Stanford Drive East, Kankakee. Police officers staked out the Rish house while the Illinois State Police obtained a search warrant. The search warrant was granted on September 4 around 10:35 a.m. Police entered and arrested both Edwards and Rish. After Edwards and Rish were escorted out, the police executed the search warrant, but Mr. Small was not found. Edwards did not reveal where Mr. Small was

* The Honorable John C. Godbold, Circuit Judge of the Eleventh Circuit, is sitting by designation.
1. "Nightstalker" is the FBI's name for a special MU–2 aircraft with electrical surveillance gear that was allegedly used in the surveillance of Edwards. Specifically, it is a high tech twin-engine aircraft with infrared equipment that can track vehicles, boats, and suspects after dark.

buried until later that day. The body was found buried in an underground box in a densely wooded area near Edwards's home in Kankakee. Edwards failed to provide an adequate air supply to the coffin-like box Mr. Small was buried in. Edwards was subsequently charged and convicted of the kidnapping and murder of Mr. Stephen Small.[2]

Edwards raised numerous issues and appealed his conviction through the state court system. The Illinois Supreme Court affirmed the first degree murder conviction and sentence of death.. *People v. Edwards*, 144 Ill.2d 108, 579 N.E.2d 336, 161 Ill.Dec. 788 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2278, 119 L.Ed.2d 204 (1992). Edwards then filed a collateral attack on the conviction through a post-conviction proceeding in state court. Edwards's purpose in subpoenaing the federal material was to use the requested information in his post-conviction proceeding for impeachment purposes to try to show he did not make the 11:50 p.m. ransom call to the Smalls' home. The Department provided information pursuant to 28 C.F.R. §§ 16.21–29, but withheld some material on the grounds it would "disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5) (1993).

Edwards obtained a state court order to compel the Department officials to show cause why they failed to produce the additional information. The Department then removed the petition to federal court pursuant to 28 U.S.C. § 1442, and moved to quash the state court subpoenas and dismiss the show cause proceeding. The government argued that the procedural method Edwards chose to obtain judicial review of the Department of Justice decision to withhold Nightstalker information was improper because the state court never acquired proper jurisdiction to order a show cause proceeding against the government officials. The government contended that the proper method for judicial review of an agency ·decision is to file an Administrative Procedure Act [APA] claim following the guidelines set forth in the APA. The parties and the district court therefore

agreed to recast the federal proceeding as an APA claim. We review the district court's review of the Department's decision to withhold the Nightstalker information as an APA claim pursuant to the guidelines set forth under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

The district court considered the motions, conducted an APA *in camera* review of the FBI files and concluded "that the actions of the Bureau in withholding the information that was withheld … [were] proper." *United States v. Edwards*, No. 93–2235 (C.D.Ill. Nov. 12, 1993). Therefore, the district court entered judgment in favor of the Department of Justice. For the reasons set forth, we affirm.

## II.

The scope of judicial review for a court reviewing an Administrative Procedure Act claim is set forth in 5 U.S.C. § 706. Pursuant to 5 U.S.C. § 706(2)(A), the reviewing court may only reverse the agency's motion to quash if the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In applying this standard, we focus on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). "District court review of agency action is generally accorded no particular deference, because the district court, limited to the administrative record, is in no better position to review the agency than the court of appeals." *Asarco, Inc. v. United States Environmental Protection Agency*, 616 F.2d 1153, 1161 (9th Cir.1980); *see also Hanson v. Espy*, 8 F.3d 469, 472 (7th Cir.1993). Therefore, we review the Department of Justice decision to deny Edwards's access to the Nightstalker reports *de novo* in determining whether the agency's action was an abuse of discretion. Although we agree with the holding in *Asarco*, we nevertheless value the judgments of the district courts in making our own *de novo* determination.

---

**2.** Nancy Rish was also indicted along with Edwards. The trials, however, were severed and

her conviction has no bearing on the outcome of Edwards's case.

## III.

The proper method for judicial review of an agency decision pursuant to valid agency regulations is through the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Specifically, under § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Through this Act, persons are able to come into a court of the United States and gain judicial review of an agency's action that adversely affects their interests. It is, however, well established that this section of the Act does not provide an independent basis for subject matter jurisdiction in a federal district court. *Califano v. Sanders,* 430 U.S. 99, 105–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977); *see also Wikberg v. Reich,* 21 F.3d 188, 189 (7th Cir.1994); *Bruce v. United States,* 621 F.2d 914, 918 (8th Cir.1980). When a case is removed from a state court pursuant to 28 U.S.C. § 1442, the district court's basis for jurisdiction is only derivative of that of the state court. *Arizona v. Manypenny,* 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1665 n. 17, 68 L.Ed.2d 58 (1981). Therefore, the state court must initially have jurisdiction to review the agency's decision for the district court to similarly acquire such authority on removal.

At the hearing the government clarified this matter and all parties agreed to transform the state court order to show cause into an APA claim that could be properly reviewed following guidelines prescribed by the Administrative Procedure Act.[3] This procedural ruling expedited the hearing so the district court could immediately conduct an *in camera* review of the documents and determine whether the Department acted arbitrarily, capriciously, with an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). By originally proceeding the way Edwards did, he left the state court with no jurisdiction and subsequently the district

court as well. Therefore, the district court was correct in reinstating the procedural method as an APA claim so the court could immediately conduct a judicial review of the Department's decision to withhold the Nightstalker information.

## IV.

Edwards's primary argument is that the district court erred in granting the Department's motion to quash the state court subpoena. A fundamental issue in determining whether the motion to quash was proper is to first ascertain whether the state court had jurisdiction to enforce its subpoenas. If the state court has proper jurisdiction, then the district court would have derivative jurisdiction after removal to enforce the state court subpoenas.

A summary of the necessary background is as follows: Edwards's counsel wrote Assistant United States Attorney, James Lewis, and Federal Bureau of Investigation Legal Advisor, Kevin Corr, and sent a state court subpoena *duces tecum* requesting information concerning Nightstalker's use in the surveillance of Edwards. Mr. Lewis responded with documents and in his letter claimed protection for any material relating to Nightstalker.

Edwards's counsel requested additional information concerning Nightstalker. Lewis responded that the government could not confirm or deny Nightstalker's existence, and that the documents sent constituted all of the reports available to him that describe or reflect the surveillance operations. Edwards's counsel made several more attempts for additional information. All requests made to the government were honored except the demands for the exempted Nightstalker material. Lewis stated that the Department was precluded by statute from producing any documents that would reveal clas-

---

**3.** Edwards's counsel argued at the hearing that this could not proceed as an APA claim because Edwards's requests to the Department for documents continually kept producing more material. Therefore, Edwards contends that there has been no final agency action that is reviewable. We,

however, find that there is final agency action because the agency decision we are reviewing surrounds the withholding of the Nightstalker information. We find, as the district court did, that all the material that can be surrendered has properly been released.

sified information or disclose investigative techniques or procedures.[4]

Edwards's counsel argues that the Nightstalker reports gained through surveillance are critical to Edwards's state post-conviction proceeding because the information may decide an issue of credibility precluded during the state court trial. Specifically, Edwards's argument is the second ransom call made at 11:50 p.m. was not made by him. The two FBI ground units reported conflicting information concerning Edwards's whereabouts when the 11:50 p.m. phone call was placed. Edwards was aware that Nightstalker was being utilized because of the information contained in the State Police documents. He wants the surveillance information for impeachment purposes to clarify that the second ransom call was not made by him.

■ The subpoenas were in effect a request for information from an executive department, the Department of Justice, pursuant to 5 U.S.C. § 301[5] and 28 C.F.R. §§ 16.21–29. *See* 28 C.F.R. § 16.21(a)(2) (1993) (subpoena initiates the administrative process). The subpoena is treated as an administrative demand. The Department's response to the subpoenas is subject to judicial review with three procedural limitations. First, the action to be reviewed has to be an APA claim directed at the agency, the United States, or the employee thereof. 5 U.S.C. § 703; *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 464–65, 71 S.Ct. 416, 417–18, 95 L.Ed. 417 (1951) (holding that a subordinate official, an agent in charge of FBI office in Chicago, cannot be held in contempt for following Department of Justice instructions in refusing to produce records requested through a subpoena *duces tecum* ). Second, the review action must be in federal court pursuant to 5 U.S.C. § 702, rather than

in a state court that lacks jurisdiction. *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir.1989) (quashing state court subpoena for lack of jurisdiction); *see also State of Louisiana v. Sparks*, 978 F.2d 226, 234–36 (5th Cir.1992); *Swett v. Schenk*, 792 F.2d 1447, 1451–52 (9th Cir.1986); *Kansas v. Call*, 760 F.Supp. 190, 192 (D.Kan.1991); *Reynolds Metals Co. v. Crowther*, 572 F.Supp. 288, 290–91 (D.Mass.1982); *Smith v. C.R.C. Builders Co.*, 626 F.Supp. 12, 14 (D.Colo. 1983). Finally, the government must not have waived its sovereign immunity. *Sparks*, 978 F.2d at 234–36; *Boron Oil*, 873 F.2d at 70–71.

■ The jurisdiction of the federal court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court. *Manypenny*, 451 U.S. at 242 n. 17, 101 S.Ct. at 1665 n. 17. The Supreme Court has instructed that "jurisdiction of the federal court upon removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in federal court it would have had jurisdiction." *Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). Therefore, if the state court lacks the jurisdiction to enforce the subpoenas, the district court will be in no better position than the state court in enforcing the subpoenas once the case is removed to federal court.

The common law doctrine is embodied in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951); the state is without jurisdiction to independently compel the testimony or production of documents when it is contrary to a valid agency regulation. In *Touhy*, the Supreme

---

**4.** The applicable statute provides:

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist: (3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

.        .        .        .        .

(5) Disclosure would reveal investigatory records compiled for law enforcement pur-

poses, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.

28 C.F.R. § 16.26(b)(3), (b)(5) (1993).

**5.** "The head of an Executive department ... may prescribe regulations for the government of his department ... and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301.

Court held that subordinate federal officials could not be held in contempt for failing to comply with a court order that was converse to a valid federal regulation. *Id.* at 468, 71 S.Ct. at 419. *Touhy* is part of an unbroken chain of authority that supports the Department's contention that a federal employee cannot be compelled to obey a subpoena, even a federal subpoena, that acts against valid agency regulations. In *Boron Oil*, the Court of Appeals for the Fourth Circuit held that the state court had no jurisdiction to compel the testimony of an EPA agent once the federal agency exercised its regulatory authority and denied the request for testimony. *Boron Oil*, 873 F.2d at 70–72. Further, in *Swett v. Schenk*, the Fifth Circuit affirmed a district court's decision that the state court lacked jurisdiction to use contempt procedures against a National Transportation Safety Board investigator who refused to answer certain deposition questions under the guidelines of a valid NTSB regulation. *Swett*, 792 F.2d at 1451.

■ Lastly, the government stated that it did not waive its sovereign immunity with respect to the state court subpoenas. A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (citation omitted). "Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of ... subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter." *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 n. 4 (4th Cir.1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Accordingly, the cases involving § 1442(a) removals of state subpoena proceedings against unwilling federal officers have held that sovereign immunity bars the enforcement of the subpoena.[6] These courts have quashed the state court subpoenas or dismissed the contempt proceedings on the grounds that the court lacked the jurisdiction to enforce a subpoena against an unwilling sovereign. *See, e.g., Swett*, 792 F.2d at 1451–52.

---

6. *See, e.g., Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir.1989); *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir.1986); *Kansas v. Call*, 760

■ It is clear from the Department of Justice regulations governing the disclosure of confidential information, as well as the common law doctrine in *Touhy* and the litany of succeeding case law, that the United States may restrict the release of its information. It is also clear that here the Department of Justice has chosen to restrict the Nightstalker reports pursuant to valid agency authority, 5 U.S.C. § 301 and 28 C.F.R. §§ 16.21–29. The Department of Justice denies that it waived its sovereign immunity. Therefore, the district court was correct in quashing the subpoenas because the state court had no jurisdiction to compel the delivery of the Nightstalker information once the regulatory authority had denied the request.

In addition, we are fully satisfied with the district court's *in camera* review of all the Nightstalker files. The district court carefully scrutinized all the materials redacted and supplied to Edwards and compared them with all the materials in the raw files of the Springfield office of the Bureau and the unexpurgated files at the Washington D.C. office. Our own examination of the files confirms that analysis and that the files would have produced nothing useful to Edwards. As the district court stated:

> It's the order of the court that the subpoena uttered by the state court is quashed, and under the Administrative [Procedure] Act ... Title 5 Section 701 *et seq.* ... that I find or conclude that the actions of the Bureau in withholding the information that was withheld in the redacted copies supplied to [Edwards] was proper. The redacted materials only relate to police methods and techniques, and that information is properly withheld.

> .    .    .    .    .

> Now, what else is it you want me to do? It's a dry hole gentlemen.

The district court's judgment is AFFIRMED.

F.Supp. 190, 192 (D.Kan.1991), *aff'd*, 961 F.2d 220 (10th Cir.1992).