**Joseph C. FORGIONE, et al., Plaintiff,**

**v.**

**HCA INC., et al., Defendant.**

**Case No. 3:13cv337/CJK.**

United States District Court,
N.D. Florida,
Pensacola Division.

June 27, 2013.

Bryan Scott Gowdy, Mills & Carlin Pa, Jacksonville, FL, Dixie Dan Powell, Powell Powell & Powell, Crestview, FL, for Plaintiffs.

Alfred Benjamin Gordon, III, Keefe Anchors Gordon etc PA, Fort Walton Beach, FL, Benjamin W. Beard, U.S. Attorney, Northern District of Florida, Pensacola, FL, for Defendants.

### ORDER

CHARLES J. KAHN, JR., United States Magistrate Judge.

This matter arises from a state court action in which plaintiffs allege that defendants' negligence caused the death of plaintiffs' decedent. Before the court for decision is the United States' motion to quash subpoenas. (Doc. 6). The United States seeks to quash subpoenas issued by plaintiffs and served upon Peter Federovich, Nancy Wills, and Marcia Steele, seeking testimony and documents. The United States removed this action—contesting the enforcement of the subpoenas only—to federal court under 28 U.S.C. § 1442(a)(1). The parties have consented to Magistrate Judge jurisdiction. (Doc. 8). The court heard oral arguments on the matter on June 13, 2013. The United States argues that the three subpoenaed individuals, all employees of Florida's Agency for Health Care Administration ("AHCA") during the events at issue, acted "under the direction" of officials at the Center for Medicare & Medicaid Services ("CMS")—a federal agency within the Department of Health and Human Services ("HHS")—in completing a survey assessing Fort Walton Beach Medical Center's compliance with certain Medicare and Medicaid health care provider requirements. (Doc. 6, p. 2). Because the three state employees were acting "under the direction" of HHS and CMS, the United States claims they are subject to HHS's regulations governing the circumstances under which someone employed by HHS cannot be compelled to give testimony or produce documents without the agency's permission. In response, plaintiffs argue Congress never granted HHS the statutory authority to promulgate a regulation permitting "it to direct current or former [AHCA] employees to disobey a subpoena from a Florida court." (Doc. 15, p. 5). The issue, then, turns on the validity of the regulation referenced by plaintiffs, 45 C.F.R. § 2.2(3), which defines HHS employees as "[e]mployees of a contractor, subcontractor, or state agency performing survey, certification, or enforcement functions under" the Social Security Act. The definition of employee is significant to plaintiffs, because another HHS regulation prohibits any HHS "employee" from "provid[ing] testimony or produc[ing] documents in any proceedings to which

this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head...." 45 C.F.R § 2.3.

## BACKGROUND AND PROCEDURAL HISTORY

The underlying state action stems from a July 2008 incident in which a mentally ill person, admitted involuntarily under the Baker Act[1] to Fort Walton Beach Medical Center ("the hospital") for observation, escaped from the facility and ultimately killed a law enforcement officer attempting to recapture him. Following the incident, AHCA, a Florida executive agency charged with primary responsibility for investigating complaints against hospitals, see FLA. STAT. § 395.1046 (2011), investigated the hospital for compliance with Florida law. Germane to the present matter, AHCA also assessed whether the hospital was in compliance with certain federal laws, specifically those regulations relating to Medicare and Medicaid. As far as the record indicates, AHCA officials completed two distinct sets of surveys detailing the hospital's violations, one for HHS and CMS (doc. 17, pp. 2–22), and one for AHCA (docs. 16, 16–1, 16–2); both surveys, however, appear to have relied, in large part, on common facts derived from interviews with hospital staff and patients. Additionally, AHCA sent out two different sets of letters to the hospital, one addressing violations of Florida law (docs. 17, pp. 23–24, 17–1, pp. 1–4), and one addressing federal violations (doc. 17, p. 1). The AHCA letter discussing federal violations indicated CMS would be contacting the hospital shortly thereafter. CMS subsequently sent a letter to the hospital outlining the assessed violations of federal law and threatening to withhold Medicare payments if the hospital did not submit an acceptable plan of correction. (Doc. 17–1, pp. 5–7). The hospital, in turn, issued two different letters, one to CMS addressing the federal violations (doc. 17–1, pp. 11–12), and one to a state official discussing state violations (doc. 17–1, pp. 13–14).

The plaintiffs in the underlying state tort action, in seeking to depose the AHCA employees involved with the surveys, received permission from AHCA to depose such individuals pending approval by CMS. (Doc. 6–1, p. 8). Plaintiffs' counsel then requested from CMS Consortium Administrator Doctor James Farris, under HHS Regulation Title 45, Code of Federal Regulations, § 2.1(a)(b)(c), permission to depose the three AHCA employees concerning their factual findings from their investigation of the hospital. Dr. Farris, in response, cited the HHS's Touhy[2] regulations and denied plaintiffs' request to depose the three individuals. In subsequent correspondence with defense counsel, plaintiffs offered to stipulate that the depositions would be limited to those areas relating to the state investigation only. (Doc. 17–1, p. 34). Plaintiffs, with the matter still unresolved, served upon the three employees second amended subpoenas seeking deposition testimony and requiring each individual to bring their notes and records from the surveys of the hospital. On May 24, 2012, the United States removed the issue to this court.

## DISCUSSION

■ The court must first address the nature of the proceeding currently before

---

**1.** The Baker Act is a Florida statute allowing for involuntary admittance and mental examination of an individual. See FLA. STAT. §§ 394.451–394.475.

**2.** See U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

it. Traditionally, a state-court litigant will request the documents, or testimony, from the appropriate federal agency under that agency's established guidelines and regulations. If the agency refuses to allow an employee to testify or release the requested documents, the "sole remedy for the state-court litigant is to file a collateral action in federal court under the [Administrative Procedure Act]." *Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of Treasury,* 86 F.3d 1208, 1212 (D.C.Cir.1996). The Administrative Procedure Act ("APA") entitles "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute," to judicial review. 5 U.S.C. § 702. Under the APA, the court can vacate an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 541 (11th Cir.1996).

█ Here, however, plaintiffs did not file an APA action with the court; instead, the government, facing the issuance of subpoenas and pending depositions, removed the discovery issue under section 1442(a)(1). When a case is removed from state court under section 1442, the district court's jurisdiction is derivative of the state court. *See, e.g., Arizona v. Manypenny,* 451 U.S. 232, 243 n. 17, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). In other words, "the state court must initially have jurisdiction to review the agency's decision for the district court to similarly acquire such authority on removal." *Edwards v. United States Department of Justice,* 43 F.3d 312, 315 (7th Cir.1994). The foregoing limitation is significant given that the

court is tasked with addressing a federal agency's statutory authority to issue the regulation in question.

In *Edwards,* the United States District Court for the Central District of Illinois faced a similar situation and allowed the parties, after complete agreement, to "transform" a state order to show cause into an APA claim. 43 F.3d at 315. The Seventh Circuit, noting that because plaintiff removed the case under section 1442, "he left the state court with no jurisdiction and subsequently the district court as well." *Id.* Given the district court's lack of jurisdiction, the Seventh Circuit expressed approval of the district court's procedural ruling because it "reinstat[ed] the procedural method as an APA claim." *Id.* Moreover, the district court's procedural ruling had the additional benefits of "expedit[ing]" the proceedings and allowing for the court to "immediately conduct a judicial review of the Department's decision...." *Id.; see also Barnett v. Illinois State Bd. of Elections,* No. 02 C 2401, 2002 WL 1560013, at *1 (N.D.Ill. July 2, 2002) (holding that while the plaintiffs filed a motion to compel discovery instead of a properly filed APA action, "[t]he court believes this approach is in fact compatible with *Edwards* .... The bottom line in this case, no matter how the parties get there, is that the Department's refusal to comply with plaintiffs' subpoena, which was made pursuant to its *Touhy* regulations, is, as *Edwards* instructs, to be reviewed by the court under the standard set forth in the APA....").

█ At oral argument, the government expressed an unwillingness to recharacterize these proceedings as arising under the APA.[3] The government in its motion to

---

**3.** If the court finds that the instant proceeding does not arise under the APA and thus only has derivative jurisdiction under section 1442,

the court would be without jurisdiction to rule on the government's motion to quash. The government, in its motion to quash, asks

quash, however, claims that the AHCA employees are subject to HHS's *Touhy* regulations, and therefore, the court is tasked with deciding whether CMS's decision is "arbitrary in nature." (Doc. 6, p. 9). The government discusses—at length—cases addressing APA proceedings—*Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194 (11th Cir.1991), and *Westchester General Hospital, Inc. v. Department of Health and Human Services, Center for Medicare and Medicaid*, 770 F.Supp.2d 1286 (S.D.Fla.2011)-and repeatedly argues that CMS's actions do not violate the arbitrary and capricious standard of review applicable to APA proceedings. (Doc. 6, pp. 9–11). The government's own motion to quash makes clear, therefore, that at the time of filing, the government wanted the court to resolve these proceedings under the APA, and under the rules commonly applied to resolve APA questions. Although the government did not explicitly consent to characterization of the instant proceedings as an APA action, the government, nevertheless, implicitly consented by removing the action, advancing the claim that the state employees are subject to HHS's *Touhy* regulations, and urging only that CMS's actions did not violate the APA's arbitrary and capricious standard of review. *See, e.g., Bobreski v. U.S. E.P.A.*, 284 F.Supp.2d 67, 73–74 (D.D.C.2003) ("A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony 'must proceed under the APA ....'" (*quoting Houston Business Journal*, 86 F.3d at 1212)). The government concedes as much, admitting, "any review of the agency's response would have to be under the APA, at the very least, because nothing in the Federal Rules of Civil Procedure (including Rule 45) waives sovereign immunity regarding subpoenas." (Doc. 19, p. 5). In consequence I find, as to the threshold matter, the government cannot initially seek review under the APA, but once presented with an argument it does not like, seek to alter or recharacterize its arguments so that the court would be deprived of jurisdiction to entertain opposing counsel's contention. Were the court to accede to the government's position, the anomalous result could well be, in a given case, that by removing the case as it has done, the government could then rely upon an invalid regulation—not yet reaching that question in this case—to carry the day, absent a second, and duplicative, action.

On a judicial efficiency level, there are also significant reasons to confront the instant question as arising under the APA. The undersigned has already read the parties briefs, researched the relevant issues, and heard oral arguments. Plaintiffs have posited that if the court construes the instant proceeding as not being brought under the APA, they will simply file an APA action the next day, with nearly identical briefs and arguments; such an action would needlessly waste judicial resources, as well as the resources of the litigants. Moreover, the underlying state tort case is scheduled for trial beginning on July 22, 2013, and has a three week special session reserved for that time. Significant delay and inconvenience will be avoided simply by construing the instant action as arising under the APA. For the foregoing reasons, the court construes plaintiffs' response as being brought under the APA. The court has subject matter jurisdiction.

Under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory pro-

---

the court to uphold HHS's denial of plaintiff's *Touhy* request as neither "arbitrary" nor "capricious." Such relief, however, is not available if the instant proceeding does not arise under the APA.

visions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Specifically, the reviewing court will "hold unlawful and set aside agency action," if such action is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(c). Under the APA, then, the court must review HHS's regulation, that being the bar to the sought after discovery, to ensure the regulation has been promulgated within the scope of the statutory authority identified by the government.

5 U.S.C. § 301 is referred to as the federal "housekeeping statute" and allows executive agencies to "promulgate regulations concerning testimony by agency employees." *Westchester General Hosp. Inc. v. Dep't of Health and Human Servs.*, 443 Fed.Appx. 407, 409 n. 1 (11th Cir. 2011) (citations omitted). Regulations promulgated under section 301 are commonly referred to as that agency's *"Touhy"*[4] regulations. *Id.* (citations omitted). In pertinent part, section 301 states, "[t]he head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. HHS's *Touhy* regulations, codified under Title

45, Code of Federal Regulations, §§ 2.1 through 2.6, set forth rules to be followed by "employee[s] or former employee[s]" of HHS.[5] Central to the dispute here, 45 C.F.R. § 2.3 provides: "[n]o employee or former employee of the DHHS may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head pursuant to this part based on a determination by the Agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department." At issue here is HHS's definition by rule of employee, for purposes of regulating the conduct of employees, expanded in 2008 to include:

> Employees of a contractor, subcontractor, or state agency performing survey, certification, or enforcement functions under Title XVIII of the Social Security Act or Section 353 of the Public Health Service Act but only to the extent the requested information was acquired in the course of performing those functions and regardless of whether documents are also relevant to the state's activities.

45 C.F.R. § 2.2(3). The government argues that because the AHCA employees relied on their common notes and interviews to complete a survey for CMS,[6] the

---

**4.** In *Touhy*, the Supreme Court held that subordinate federal officials could not be held in contempt for failing to comply with a court order that was converse to a valid federal regulation. 340 U.S. at 468, 71 S.Ct. 416.

**5.** Plaintiffs also argue that *Touhy* regulations do not apply to a federal agency's former employees. (Doc. 15, p. 11). As far as this court is aware, there is no case law affirmatively holding that *Touhy* regulations do not apply to an agency's former employees. The cases cited by plaintiff do not explicitly hold

that 5 U.S.C. § 301 is inapplicable to former employees or is invalid if applied in that manner. Given the court's conclusions in this Order, however, the court need not reach the question of whether section 301 is applicable to former employees.

**6.** Ironically, the individuals best able to explain their actions and provide greater detail into the investigation process and separation of federal and state responsibilities are currently prohibited by CMS from doing so.

entire investigation, including those actions taken solely for the state investigation, are within the bar of the regulations. As far as this court is aware, neither *Touhy* or its progeny, nor any of the cases and statutes discussed in the parties briefs, address whether HHS, or any government agency for that matter, has the statutory authority under *Touhy* to prescribe by regulation the conduct of state employees pertaining to their legally mandated state activities. *See generally* FLA. STAT. §§ 395.003(1)(a), 395.003(7), 408.811, 408.815. Of import, AHCA employees are legally required by state law to investigate any complaints against a hospital for certain statutory violations. *See* FLA. STAT. § 395.1046.

A court reviewing an agency's construction of a statute, where the agency has promulgated a regulation, must first ask "whether Congress has directly spoken to the precise question at issue," and if not, assess whether the "statute is silent or ambiguous with respect to the specific issue...." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 (1984). If Congress has directly spoken on the specific issue, the court must end its inquiry. *Id.* If the statute is silent or ambiguous, however, the court asks "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Although an agency's interpretation of an ambiguous statute "may also receive substantial deference," such "[d]eference in accordance with *Chevron* ... is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzales v. Oregon,* 546 U.S. 243, 255–56, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) *(quoting United States v. Mead Corp.,* 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). "[The court] will

give effect to the agency's interpretation so long as it is 'reasonable,' that is, so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations.'" *Legal Environmental Assistance Foundation, Inc. v. U.S. E.P.A.,* 276 F.3d 1253, 1262 (11th Cir.2001) (citations omitted); *see also Gonzales,* 546 U.S. at 258, 126 S.Ct. 904 ("*Chevron* deference, however, is not accorded merely because the statute is ambiguous and an administrative official is involved.... [T]he rule must be promulgated pursuant to authority Congress has delegated to the official." (*citing Mead,* 533 U.S. at 226–27, 121 S.Ct. 2164)); *Christensen v. Harris County,* 529 U.S. 576, 596–97, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (Breyer, J., dissenting) (*Chevron* deference is inapplicable "where one has doubt that Congress actually intended to delegate interpretive authority to the agency"). As put by the Eleventh Circuit, "[the court] defer[s] to those regulations when the statutory language is ambiguous or the statutory terms are undefined." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1299 (11th Cir.2011).

Plaintiffs admit that section 301 allows for agencies to promulgate "housekeeping regulations" governing the conduct of their employees. They argue, however, that Section 301 does not grant authority for government agencies to interpret the term "employee" in such an expansive way as to regulate state actors' state conduct. Even assuming the word employee is ambiguous, section 301 specifically limits the promulgation of regulations to those affecting the agency's own employees. *See* 5 U.S.C. § 301 ("The head of an Executive department or military department may prescribe regulations for the government of his department," and "the conduct of *its employees* ....") (emphasis added); *see also City of Arlington, Tex. v. F.C.C.,* —— U.S. ——, 133 S.Ct. 1863, 1874, ——

L.Ed.2d ―― (2013) ("[W]here Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow.").

As to the first prong of *Chevron,* Congress has set out the demarcation of those who would be subject to the housekeeping regulations to be enacted. The authority delegated to an agency is to regulate the "conduct of its employees." 5 U.S.C. § 301. Here, as discussed below, no understanding of the term "employee" could cover state workers, who by virtue of the state's voluntary agreement, conduct surveys later used by HHS.

The government also argues that HHS's definition under 45 C.F.R. § 2.2(3) concerning what constitutes an employee is similar to that developed by other agencies. (Doc. 19, p. 4). The government claims that federal agencies routinely define employment in a way similar to what HHS has done here. Review of other agencies' definitions of what constitutes an employee, as cited by the government, however, demonstrates that these definitions of "employee" are all more limited in their scope and all require some indicia of control on the agency's behalf over the employee, or are limited to contractors acting in the stead of employees. *See* 10 C.F.R. § 202.21(b) (for the Department of Energy, "the term 'Employee of the DOE' includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of, the Administrator of DOE."); *see also* 28 C.F.R. § 16.21(d) (for the Department of Justice, "the term employee of the Department includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of the Attorney General of the United States, including U.S. Attorneys, U.S. Marshals, U.S. Trustees and members of the staffs of those officials."); 22

C.F.R. § 172.1(b) (for the Department of State, "the term employee includes the Secretary and former Secretaries of State, and all employees and former employees of the Department of State or other federal agencies who are or were appointed by, or subject to the supervision, jurisdiction, or control of the Secretary of State or his Chiefs of Mission, whether residing or working in the United States or abroad, including United States nationals, foreign nationals, and contractors."); 32 C.F.R. § 97.3(b) (for the Department of Defense, "[Department of Defense] Personnel. Present and former U.S. military personnel; Service Academy cadets and midshipmen; and present and former civilian employees of any Component of the Department of Defense, including nonappropriated fund activity employees; non-U.S. nationals who perform services overseas, under the provisions of status of forces agreements, for the U.S. Armed Forces; and other specific individuals hired through contractual agreements by or on behalf of the Department of Defense."); 32 C.F.R. § 1905.2(c) (for the Central Intelligence Agency, "[e]mployee means any officer, any staff, contract, or other employee of CIA; any person including independent contractors associated with or acting on behalf of CIA; and any person formerly having such a relationship with CIA."). As can be seen, each of these rules crafts a definition that is not at odds with a common understanding of the term being defined. Save for the DOD and CIA rules, these regulations on their face provide for a level of supervision or control. This court obviously expresses no view on the validity of these regulations, although one could reasonably argue that a person acting on behalf of the military or the Central Intelligence Agency is not analogous to a state-employed hospital inspector. None of the rules identified here by the United States

expressly purports to apply to the acts of state employees, thus the concerns, if any, with those rules would not overlap with the issues now before the court.

Right to control is the classic factor in determining who is an employee when that question is in doubt. *See, e.g., Langfitt v. Fed. Marine Terminals, Inc.,* 647 F.3d 1116, 1121 (11th Cir.2011) ("The essence of the common law's test for whether an agent is an employee or an independent contractor is the control of details; that is, whether the principal has the right to control the manner and means by which the agent accomplishes the work."); *see also, e.g., N.L.R.B. v. Steinberg,* 182 F.2d 850, 857 (5th Cir.1950) [7] ("[T]he employer-employee relationship exists only where the employer has the right to control and direct the work, not only as to the result to be accomplished by the work, but also as to the manner and means by which that result is accomplished. It is the right and not the exercise of control which is the determining element."); *Lockett v. Allstate Ins. Co.,* 364 F.Supp.2d 1368, 1376 (M.D.Ga.2005) (noting that within the context of deciding whether someone is an independent contractor or employee, "the touchstone of this determination is the 'hiring party's right to control the manner and means by which the work is accomplished.' And Defendant's minimal role in suggesting or controlling the manner and means by which Plaintiff conducts his daily business at the agency suggests that Plaintiff was not an employee." (*quoting Daughtrey v. Honeywell,* 3 F.3d 1488, 1496 (11th Cir.1993))); *E.E.O.C. v. Dolphin Cruise Line, Inc.,* 945 F.Supp. 1550, 1556 (S.D.Fla.1996) ("An employee is a person in the services of another under any contract of hire, where the employer has the

power or right to control and direct the employee in the material details of how the work is to be done." (citations omitted)). A state employee, operating under the agreement between HHS and the state, and performing investigatory functions required by Florida law, is not subject to the control of HHS or CMS.

In fact, AHCA was required to investigate the occurrence here, irrespective of any federal law. *See generally* FLA. STAT. §§ 408.811, 395.003(7) (2008). AHCA was charged with suspending or revoking the hospital's licensure if it found there was a substantial failure to comply with the requirements established under Florida law. *See* FLA. STAT. § 395.003(7) (2008). The hospital's license could be revoked by AHCA if the agency found an intentional or negligent act materially affecting the health or safety of a client of the provider or a demonstrated pattern of deficient performance. *See* FLA. STAT. § 408.815 (2008). "The regulation of health and safety is primarily, and historically, a matter of local concern," though the federal government can set uniform national standards. *Gonzales,* 546 U.S. at 271, 126 S.Ct. 904. Nothing in the enabling statute, section 301, purports to usurp the sovereignty of the State of Florida. The regulation, however, does.

The relationship between AHCA and the federal agency is voluntary. The voluntary relationship between state agencies and HHS in performing surveys of health care facilities is described in 42 U.S.C. § 1395aa of the Public Health and Welfare Act. That subpart provides the Secretary of HHS "shall make an agreement with any State which is willing and able to do so under which the services of the State health agency ... will be utilized ... for the

---

**7.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding prece-

dent all decisions of the former Fifth Circuit Court of Appeals issued before October 1, 1981.

purpose of determining whether an institution therein is a hospital. . . ." 42 U.S.C. § 1395aa(a). The subpart also authorizes the Secretary of HHS to enter into an agreement with any State agency which performs the certification function to survey hospitals when there is a substantial allegation of a deficiency adversely affecting the health and safety of patients. *See* 42 U.S.C. § 1395aa(c). In return for the State's agreement to conduct the surveys and verify certification, HHS reimburses the State for the cost of conducting the surveys and verifying a hospital's compliance with federal law. *See* 42 U.S.C. § 1395aa(b).

AHCA's state obligation to investigate hospitals for licensure purposes runs parallel to, and is not a part of, its voluntary agreement to conduct surveys for HHS. The two tasks, conducted here by the state employees in question, are not dependent on one another, and as far as the record shows, are not directed or supervised by the federal government. The term "employee," utilized in the statute, is one of common understanding, and is not ambiguous.

Assuming, however, that the statutory phrase is ambiguous, the regulation is not entitled to deference under *Chevron*, as suggested above. Deference to an agency's regulation in accordance with *Chevron* "is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the

force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' " *Gonzales*, 546 U.S. at 255–56, 126 S.Ct. 904 (*quoting Mead Corp.*, 533 U.S. at 226–227, 121 S.Ct. 2164). A court is not required to defer to an agency's interpretation of a statute "merely because the statute is ambiguous and an administrative official is involved." *Id.* at 258, 126 S.Ct. 904. Deference is owed only if the rule was "promulgated pursuant to authority Congress has delegated to the official." *Id.*

Here, section 301 delegates to HHS and other agencies the authority to establish rules regulating agency employees and their actions-even their attire, as suggested by the United States at the hearing. But nothing in the statute suggests that an agency may redefine a word of common understanding, such as "employee." Section 301 delegates authority to enact housekeeping rules to a multitude of agencies. This action of Congress would suggest that no single agency has any particular expertise to interpret or define the words chosen by Congress. With no disrespect intended, surely no one would argue that HHS has some particular expertise in defining who is an employee.[8]

■ Accordingly, *Chevron* deference is inappropriate in this instance because Congress did not give HHS the authority to disseminate rules regulating the conduct of these state employees, or interpret the

---

8. Deference is certainly due where Congress has considered the agency—to which authority is delegated by statute—to have special means and knowledge to carry out the purpose of the legislation. *See, e.g., Nat'l Cable & Telecomms. Assn. v. Brand X Internet Servs.*, 545 U.S. 967, 980, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (explaining that FCC regulation received *Chevron* deference because "Congress has delegated to the [FCC] the authority to . . . 'prescribe such rules and regulations as may be necessary in the public

interest to carry out the provisions' of the Act" (*quoting* 47 U.S.C. § 201(b))); *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 238, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004) (giving *Chevron* deference to a Federal Reserve Board regulation where "Congress has expressly delegated to the Board the authority to prescribe regulations . . . as, in the judgment of the Board, 'are necessary or proper to effectuate the purposes of' " the statute. (*quoting* 15 U.S.C. § 1604(a))).

word "employee" in such a far-reaching manner. The understanding created by the regulations here is much more akin to abject redefinition than mere application of agency expertise to fill in a space purposely left by Congress. A grant of Congressional authority as broad as that assumed by the regulation would be "fundamentally incompatible with our constitutional system of dual sovereignty." *Printz v. U.S.,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (affirming the principle that, "the federal government cannot compel the States to enact or enforce a federal regulatory program," and holding, "Congress cannot circumvent that prohibition by conscripting the State's officers directly. The Federal government may neither issue directive requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions to administer or enforce a federal regulatory program.").[9] Significantly, the State of Florida, for whom the would-be deponents were actually employed, has not endorsed the federal policy underlying the regulation in question. Florida is perfectly amenable, as represented by plaintiffs at the hearing, to these employees honoring the subpoenas.

If not due *Chevron* deference, the HHS's interpretation is " 'entitled to respect' only to the extent it has the 'power to persuade.' " *Gonzales,* 546 U.S. at 256, 126 S.Ct. 904 (*quoting Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also Buckner v. Fla. Habilitation Network, Inc.,* 489 F.3d 1151, 1155 (11th Cir.2007) ("[A]n agency's interpretation may merit some deference depending upon the 'thoroughness evident in its consideration, the validity of its reason-

ing, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " (*quoting Skidmore,* 323 U.S. at 140, 65 S.Ct. 161)). Here, although HHS's interpretation of the statute to include state employees was deliberate, *see* Testimony by Employees and the Production of Documents in Proceedings Where the United States is Not a Party, 73 Fed. Reg. 53148–01 (proposed Sept. 15, 2008) (to be codified at 45 C.F.R. pt. 2), the reasoning underlying its decision to do so is not persuasive.

The government argues that allowing private litigants to subpoena the surveyors would have "chilling effect on the surveyors," and would disrupt the "primary function of conducting surveys. . . ." (Doc. 6, p. 11). The government also asserts the record before the Court demonstrates that HHS officials reviewed plaintiffs' request and denied it, finding that denial was in accord with HHS's policy to maintain strict impartiality with respect to private litigants. (Doc. 6, p. 11). The instant subpoenas do not raise concerns related to impartiality. As the plaintiff's request letter made clear, the deponents would not be asked to testify as expert witnesses or render expert opinions. (Doc. 6–1, p. 8). Rather, they would be asked about their factual findings in the course of completing their investigation for AHCA. (Doc. 6–1, p. 8). Given that the plaintiffs do not seek the federal survey information, and the AHCA employees are already required to testify concerning their state investigation under Florida law, such policy concerns are not applicable. Instead, the practical effect of such a regulation is to bar the

---

9. As far as the record indicates, the agreement between AHCA and HHS does not appear to involve Congress' spending power as illustrated in *Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (with-

holding highway funds unless States adopt a minimum drinking age of 21). Under 42 U.S.C. § 1395aa, HHS reimburses the state for the costs associated with conducting the surveys.

AHCA employees from their legally required obligations under Florida law to obey a subpoena. *See generally F.G. v. Agency for Persons with Disabilities,* 940 So.2d 1095 (Fla.2006). Rather than aiding state employees in the performance of their duties, the regulation here simply impedes a search for the truth.

For the reasons stated herein, the regulation in question, 45 C.F.R. § 2.2(3), may not be used to nullify the subpoenas.

Accordingly, it is ORDERED:

1. Plaintiff's Motion to Construe Response as Request for Relief Under Administrative Procedure Act (doc. 22) is GRANTED.

2. Defendant's Motion to Quash (doc. 6) is DENIED.