**LIBERTY NATIONAL LIFE
INSURANCE COMPANY,**
Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION, Defendant.**

No. CIV.A. 03–0010–CGC.

United States District Court,
S.D. Alabama,
Southern Division.

Aug. 12, 2003.

Halron W. Turner, Turner, Onderdonk, Kimbrough & Howell, Chatom, AL, Lynn S. Darty, Sharon D. Stuart, Christian & Small LLP, Birmingham, AL, for Plaintiff.

Patricia Nicole Beyer, U.S. Attorney's Office, Mobile, AL, for Defendant.

*ORDER*

GRANADE, Chief Judge.

This matter is before the court on the Report and Recommendation of the Magistrate Judge (Doc. 5), plaintiff's objection thereto (Doc. 6), and defendant's response to plaintiff's objection (Doc. 9). The Magistrate Judge recommended that the court find that the decision of the Commissioner, Social Security Administration (SSA) to not allow the taking of the deposition of Joseph Newton was not arbitrary and capricious. The Magistrate Judge found that SSA considered the relevant factors in its determination and clearly set forth its position that allowing the testimony would unduly burden the agency and would not serve the agency's interests. The Magistrate Judge reasoned that:

> Given the thousands of applications for social security benefits pending in Alabama and the significant backlog of cases, this Court simply cannot find that the agency's belief that allowing Newton's testimony (for even just an hour) would unduly burden it is arbitrary and capricious. This is particularly so where, as here, Liberty National cannot establish that Newton has information regarding Barefield's file that goes to the heart of the central issue in this case [FN 4: In the undersigned's opinion, testimony from Newton that the Barefields likely or may have signed forms assigning to Medicaid any private health insurance benefits available to them would not promote Liberty National's position in the state case any more than the forms available to the corporation through its FOIA request or by Internet search.] nor that Newton has information about SSA procedure that has not been supplied by the state agency deponent or cannot be gained from SSA documents obtained through the corporation's pending FOIA request. *Cf. Stacey v. Caterpillar, Inc.,*

901 F.Supp. 244, 247 (E.D.Ky.1995) ("Where a party's interests in discovery of information held by the government or a government official outweigh the unique interests of the government, then section 301 must yield to discovery in the appropriate manner.... Although the Court appreciates the legitimate and important interest of MSHA in shielding its employees from becoming involved in time consuming discovery so that they may properly do their jobs, in **this instance that interest is outweighed by Caterpillar's need to obtain this critical information which is otherwise unavailable.**"). [FN 5: As heretofore indicated, there is no evidence suggesting that the information Liberty National hopes to gain from Newton is critical but even more importantly, there has been no showing that this information is unavailable through the corporation's pending FOIA request or by simply searching the Internet for the desired forms.] Finally, this Court cannot find the SSA's wish to remain impartial in a lawsuit pitting private litigants in the least bit arbitrary and capricious. *Crowther, supra,* 572 F.Supp. at 290 ("The policy behind prohibition of testimony is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business.")

(Doc. 5, *10–11, emphasis in original).

Plaintiff, Liberty National Life Insurance Company, ("Liberty National") objects on the bases that 1) it has established that Newton has critical information which cannot be obtained from an alternate source, and 2) the testimony would not unduly burden the agency and would serve a vital interest. Liberty National contends that the evidence sought is critical to dispute the claim that the plaintiff in the underlying action reasonably relied on the representations made by Liberty National. Liberty National further asserts that such information cannot be obtained through a FOIA request or by Internet search. However, as SSA's response demonstrates, the notice which is the basis of Liberty National's defense can be found on the Internet at the sites indicated, and the policy and statutory citations underlying the notice are also available through the Internet. In addition, SSA states that it has now completed Liberty National's FOIA request and that the materials requested are available to Liberty National upon payment to SSA for its employee time spent researching and assembling the information. The court finds that Liberty National has not established that Newton has important information regarding the underlying case that cannot be found elsewhere. It does not appear that Newton could testify as to what actually occurred in Mr. Barefield's case. Newton cannot be expected to have any knowledge of actual documents or notices related to Barefield, and Liberty National has access to the documents or notices that would presumably have been executed by or provided to Barefield. The court finds that Newton's testimony is not crucial to Liberty National's defense of the underlying case.

The court also agrees with the Magistrate Judge's finding that permitting the testimony would not serve SSA's interests. Given the thousands of applications for social security benefits pending in Alabama and the significant backlog of cases, requiring Newton's testimony would be burdensome on the SSA. In addition, it is the policy of SSA to remain neutral in private actions, and providing aid to Liberty National would not serve that interest.

Liberty National cites *Stacey v. Caterpillar, Inc.,* 901 F.Supp. 244 (E.D.Ky.1995) for the proposition that where deposition testimony is critical and otherwise unavailable, the need to obtain that information outweighs the interests of SSA. However, in this case the information is not critical or otherwise unavailable. The court finds that Liberty National's need to obtain the information does not outweigh the interests of SSA.

### CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the recommendation to which objection is made, the recommendation of the Magistrate Judge made under 28

U.S.C. § 636(b)(1)(B) and dated May 27, 2003, is **ADOPTED** as the opinion of this court.

### JUDGMENT

In accordance with the order entered this date, it is hereby **ORDERED, ADJUDGED and DECREED** that Liberty National Life Insurance Company's motion to compel the deposition testimony of Joseph R. Newton, Jr. (Doc. 1) be **DENIED.**

### REPORT AND RECOMMENDATION

CASSADY, United States Magistrate Judge.

This miscellaneous civil action is before the undersigned for entry of a report and recommendation on the plaintiff's application, pursuant to 5 U.S.C. § 702, to compel the deposition of Joseph R. Newton, Jr., or in the alternative, seeking a writ of mandamus (Doc. 1), the defendant's response to plaintiff's application (Doc. 3), and plaintiff's reply to defendant's response (Doc. 4). Following a consideration of the contents of the foregoing pleadings, all materials submitted in support of those pleadings, and the arguments of counsel, this report and recommendation is entered pursuant to 28 U.S.C. § 636(b)(1)(B).[1]

### FINDINGS OF FACT

1. The instant discovery motion arises out of an underlying action presently pending in the Circuit Court of Choctaw County, Alabama. (*See* Doc. 4, Exhibit A) In that action, which was initially filed on July 7, 1999, Liberty National Life Insurance Company has been sued for fraud, negligence and wantonness in connection with its January 17, 1992 sale of a Cancer Expense Policy that would cover the medical expenses of Gavin Barefield, Jr., should he develop cancer. (*Id.*)

2. Some three years following the institution of the state action, that is, on July 9, 2002, Liberty National filed a civil subpoena for production of documents from the Social Security Administration, therein seeking the following: "All documents or things in your possession, custody, or control that pertain or relate to **Gavin L. Barefield Jr.,** DOB 2–20–49, SS# 416–86–2056, including but not limited to applications, determinations, reapplications, or redeterminations relating to such person's eligibility for Social Security, ADC, Medicaid, or any other benefits or coverage; claims made by or benefits paid to such person or anyone acting or purporting to act on his behalf; and correspondence, questionnaires, brochures, or other documents or responses thereto sent to or received from such person or anyone acting or purporting to act on his behalf." (Doc. 1, Exhibit C; *see also id.* Exhibit B)

3. On July 24, 2002, Barefield's attorney, Leah O. Taylor, Esquire, wrote a letter to Joe Newton with the Social Security Administration in Selma, Alabama and informed Newton that Gavin Barefield, Sr., as Conservator of the Estate of Gavin Barefield, Jr., had signed an authorization for the release of the records subpoenaed by Liberty Nation. (Doc. 1, Exhibit D)

4. By letter dated October 15, 2002, Newton informed Choctaw County Circuit Judge J. Thomas Baxter that the subpoenaed records had been lost. (Doc. 1, Exhibit E) "The records on Mr. Barefield were requested in July 2002 following Social Security Administration procedure and the appropriate follow-ups were done. I was notified October 2, 2002 through our Regional Office in Atlanta that the folder was lost and therefore would not be available for copying. I apologize that we will not be able to provide the copies as requested." (*Id.*)

5. On or about February 5, 2003, Joe Newton was served with a deposition subpoena, same requesting his presence on February 18, 2003 at the Selma Social Security Administration for the purpose of giving his deposition. (Doc. 1, Exhibit G) In addition, that same date, Newton was served with a trial subpoena requesting his presence at the trial in Choctaw County Circuit Court on

---

1. The undersigned has entered a report and recommendation, rather than an order, regarding the instant motion to compel inasmuch as the ruling on the motion disposes of this miscellaneous action.

February 24, 2003. (Doc. 1, Exhibit H) Finally, Liberty National made application with the Office of the General Counsel of the Social Security Administration in Baltimore, Maryland for Newton's testimony. (Doc. 1, Exhibit A)

Pursuant to 20 CFR § 403.120, we request that you treat this letter as our written application to obtain the testimony of Joseph R. Newton Jr., who is the Assistant District Manager for the SSA's Selma, Alabama office, regarding the plaintiff Gavin L. Barefield Jr., Social Security Number 416–86–2056. Mr. Barefield lives in Choctaw County, Alabama, and he receives benefits from the SSA as well as the Alabama Medicaid Agency. Because Mr. Barefield lives in Choctaw County and receives assistance from both agencies, the Selma SSA office administers his file for both agencies. For your information, we previously requested Mr. Barefield's file from the SSA, but were advised that it had been lost.

Mr. Barefield claims in his lawsuit that defendants wrongfully sold him a cancer expense policy in 1992 that he purportedly did not need because he was a Medicaid recipient. However, Alabama law expressly requires that Medicaid recipients assign to Medicaid any private health insurance benefits available to them to maintain their Medicaid coverage. *See* Ala.Code § 22–6–6.1 (1975). This requirement is contained in all applications for SSI benefits as well as all statements for determining continuing eligibility for SSI benefits. We believe that Mr. Barefield signed several forms containing this requirement, but those forms were lost with his file. If we can establish that Mr. Barefield likely signed such forms before he purchased his cancer expense policy in 1992, then that fact will refute his claim that he did not know his private insurance benefits would be assigned to Medicaid. Because Mr. Barefield's file no longer exists, we will be forced to establish this fact through the testimony of Mr. Newton. In addition to this fact, we will want to establish through Mr. Newton's testimony certain historical facts, e.g., that Mr. Barefield currently is a Medicaid recipient and has been since January 1974.

We will need Mr. Newton to testify at the trial of this case, which is currently scheduled for February 24, 2003. In lieu of trial testimony, we would be willing to allow Mr. Newton to give his testimony by deposition, which would be taken before trial at the Selma SSA office or at any other location in Selma or elsewhere that is convenient for Mr. Newton.

We are making our request at this time because we only recently learned that Mr. Barefield's SSA file was lost. Moreover, we only recently determined that, because the SSA administers Mr. Barefield's file for the Alabama Medicaid Agency, that agency is unable to establish the facts outlined above.

We believe it is in the SSA's best interest to grant our application for three reasons: first, our clients played no part in the loss of Mr. Barefield's SSA file; second, our clients need the requested information to mount a viable defense to the lawsuit; and third, SSA should encourage persons who receive medical assistance from Medicaid and who also own private health insurance to use that insurance to reimburse Medicaid to the extent it provides medical assistance to the recipient.

(*Id.*)

6. On February 18, 2003, Liberty National filed a motion for an order compelling Newton to obey the deposition subpoena. (Doc. 1, Exhibit I) Thereafter, on February 20, 2003, the United States entered the fray, Assistant United States Attorney Patricia N. Beyer, Esquire, filing a motion to quash the subpoena. (Doc. 1, Exhibit J)

7. On March 7, 2003, the Office of the General Counsel of the Social Security Administration denied Liberty National's application for Newton's testimony. (Doc. 1, Exhibit L)

You filed an application requesting the testimony of Assistant District Manager Joseph R. Newton, Jr., an SSA employee, in the above-referenced case. Consistent with the Agency's regulations at 20 C.F.R. Part 403 governing requests for testimony by employees and the production of rec-

ords and information in legal proceedings, this letter constitutes the final decision on your application. Based on the request submitted, I have determined that it would not be in the interest of the Agency to permit the requested testimony in this matter.

SSA's regulations provide that an Agency employee may only appear and testify concerning any function of SSA or any information or record created or acquired by SSA as a result of the discharge of its official duties in a legal proceeding to which the Agency is not a party only with the prior authorization of the Commissioner, or her designee. *See* 20 C.F.R. § 403.100. Similar regulations governing federal employee testimony have consistently been upheld as legitimate. *See United States ex rel. Touhy v. Ragen,* 340 U.S. 462[, 71 S.Ct. 416, 95 L.Ed. 417] (1951); *Smith v. Cromer,* 159 F.3d 875 (4th Cir.1998); *Swett v. Schenk,* 792 F.2d 1447 (9th Cir.1986).

As a threshold matter, we note that the application was not filed in a timely manner. Under SSA's regulations, a request must [be] submitted at least 30 days in advance of the date that you need the testimony. 20 C.F.R. § 403.120(b). According to the regulations, if the request for testimony is submitted fewer than 30 days before the date of testimony, you must provide a detailed explanation as to why the application was not filed in a timely manner and why it is in SSA's interest to review the untimely application. 20 C.F.R. § 403.120(b)(1), (2). In this case, you noted that your application was delayed because SSA could not locate the requested file. Although we were unable to locate the requested file, you have not articulated how it is in SSA's interest to review the untimely application. As a result, I have found that a waiver of the timeliness requirement would *not* be appropriate under the circumstances of this request.

Under our regulations, we may consider several factors in determining whether to authorize testimony in cases in which SSA is not a party. Those factors include, but are not limited to, considering whether the proposed testimony would risk violating a law or compromising a Government privilege, the burden on SSA, and the interests served by allowing the testimony. *See* 20 C.F.R. § 403.130. Based on your written request, the criteria for employee testimony are not met in this case.

In this matter, we have determined that allowing the testimony would unduly burden SSA. 20 C.F.R. § 403.130(b). Permitting the requested deposition would divert Mr. Newton from his normal responsibilities as Assistant District Manager, thereby reducing SSA's ability to timely process current cases, with no counterbalancing benefit to SSA. Moreover, the testimony requested in this matter could be obtained in a less burdensome form or from another source. 20 C.F.R. § 403.130(b)(2). To the extent that information regarding Mr. Barefield is only available from SSA's computer systems, such as his benefit status, the Agency can provide a certified copy of an electronic printout of his records with appropriate consent. *See* 20 C.F.R. § 403.155. Information regarding what materials and notices SSA generally provides to applicants for benefits, including some historical versions, are available by filing a Freedom of Information Act request. 5 U.S.C. § 552. Similarly, application forms and instructions on how claimants should complete these forms are widely available to the public and may be found on the Internet, in a field office, or in the Agency's POMS instructions. Under these circumstances, providing testimony would unduly burden for private purposes the resources of the United States. 20 C.F.R. § 403.130(b)(1).

Moreover, providing testimony in this case would not serve SSA's interests. 20 C.F.R. § 403.130(c). You asserted that it was in SSA's interest to permit testimony because your clients played no part in the loss of Mr. Barefield's SSA file, your clients need the requested information to mount a viable defense, and "SSA should encourage persons who receive medical assistance from Medicaid and who also own private health insurance to use that insurance to reimburse Medicaid to the extent it

provides medical assistance to the recipient." Nothing suggests that your clients were responsible for the loss of the requested file, and as we noted above, the information sought through testimony is available through means less burdensome than testimony. SSA does have an interest in ensuring that other federal programs, such as Medicaid, are properly reimbursed. As you note in your application, however, SSA includes statements to that effect in SSI applications for benefits and in statements for determining continuing eligibility. Because this case involves a civil dispute between private parties and there is no other government agency involved, it is unclear how SSA's interest in reimbursing Medicaid would be advanced by participating in this matter. In addition, permitting this employee to testify in a suit in which SSA is not a party would undermine SSA's strict policy of impartiality among private litigants. 20 C.F.R. § 403.130(c)(2).

(*Id.*)

8. On March 26, 2003, Liberty National made the FOIA request referenced in the denial letter. (Doc. 1, Exhibit K) "We represent the defendants in the civil litigation described above, and we need to obtain copies of certain SSA documents for use in that litigation. Accordingly, pursuant to 5 U.S.C. § 522, please send us copies of the following documents: (1) all applications for SSI that would have been in use from 1973 through 1974; (2) all statements for determining continuing eligibility for SSI payments that would have been in use from 1973 through 1992; and (3) all assignment of rights statements that would have been in use from 1973 through 1992." (*Id.*) This request is still pending.

9. On April 18, 2003, Liberty National filed the instant application in this Court, pursuant to 5 U.S.C. § 702, seeking to compel the deposition of Joseph R. Newton, Jr. (Doc. 1) In the alternative, Liberty National seeks to file a petition for writ of mandamus.

(*Id.*) Liberty National avers that this Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, and mandamus jurisdiction, pursuant to 28 U.S.C. § 1361. (Doc. 1, ¶¶ 4–5) During oral argument on May 20, 2003, the government took the position that this Court may exercise federal question jurisdiction under the Administrative Procedures Act but that the Court lacks mandamus jurisdiction.

### CONCLUSIONS OF LAW

1. Pursuant to The Mandamus Act, this Court has original jurisdiction over a mandamus action " 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' " *Cash v. Barnhart,* 327 F.3d 1252, 1257 (11th Cir.2003), quoting 28 U.S.C. § 1361.

Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) "no other adequate remedy [is] available." Put another way, a writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."

*Id.* (internal citations omitted).

2. It is the undersigned's opinion that this Court cannot exercise mandamus jurisdiction in this case inasmuch as Liberty National has made none of the required showings. Put simply, Liberty National has not established that it has a clear right to the relief requested, that the government owes the company a clear nondiscretionary duty to offer up an employee for deposition,[2] or that it can pursue no other adequate remedy. *See Giza v. Secretary of Health, Education & Welfare,* 628 F.2d 748, 752 (1st Cir.1980) ("There was no mandamus jurisdiction because Dr. Finkel owed the Gizas no duty to submit to a deposition."); *Reynolds Metals Co. v. Crowther,* 572 F.Supp. 288, 291 (D.Mass.1982) ("Since the two OSHA employees owed no duty to the plaintiff to sub-

---

**2.** *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) is "part of an unbroken chain of authority that supports the Department's contention that a federal employee

cannot be compelled to obey a subpoena, even a federal subpoena, that acts against valid agency regulations." *Edwards v. United States Dep't of Justice,* 43 F.3d 312, 317 (7th Cir.1994).

mit to a deposition, there is no mandamus jurisdiction.").

3. This Court, however, may necessarily exercise federal question jurisdiction in this case, instituted in federal court, under the Administrative Procedure Act ("APA") which contains an express waiver of sovereign immunity. *Connaught Laboratories, Inc. v. SmithKline Beecham, P.L.C.,* 7 F.Supp.2d 477, 479 (D.Del.1998); *see also People v. Mayfield,* 1999 WL 414264, *4 (N.D.Ill.1999) ("Mayfield's only remedy would be an action under the Administrative Procedure Act in federal court.").[3]

4. The standard of review applicable in this case is set forth in the Administrative Procedure Act, 5 U.S.C. § 706, which provides that a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); *see also Moore v. Armour Pharmaceutical Co.,* 927 F.2d 1194, 1197 (11th Cir.1991) ("Pursuant to 5 U.S.C. § 706(2)(A) the district court could only overturn HHS's action if such action was 'arbitrary, capricious, an abuse of discretion, or otherwise not [in accordance with] law.' ").

To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is a narrow one. Along the standard of review continuum, the arbitrary and capricious standard gives an appellate court the *least* latitude in finding grounds for reversal; [a]dministrative decisions should be set aside in this context ... only for substantial procedural or substantive reasons as mandated by statute, ... not simply because the court is unhappy with the result reached. The agency must use its best judgment in balancing the substantive issues. The reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the proposed action.

*Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 541–542 (11th Cir.1996) (internal quotation marks omitted; citations omitted; emphasis in original).

5. Following a thorough review of the exhibits in this file, *see Edwards, supra,* 43 F.3d at 314 ("In applying this standard, we focus on 'the administrative record already in existence, not some new record made initially in the reviewing court.' "), and a con-

---

**3.** The Commissioner has not defended this independent action on the basis of sovereign immunity nor can she. While the issue of sovereign immunity is preeminent in the state action, and would have been preeminent in this Court had the state action been removed by the Commissioner, that same concern is not present here. *Smith v. Cromer,* 159 F.3d 875, 879 (4th Cir. 1998) ("It is clear that a federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction.... It is also clear that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity.... Where an agency has not waived its immunity to suit, the state court (and the federal court on removal) lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction."), *cert. denied,* 528 U.S. 826, 120 S.Ct. 76, 145 L.Ed.2d 64 (1999); *Edwards, supra,* 43 F.3d at 316 ("The jurisdiction of the federal court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court.... The Supreme Court has instructed that 'jurisdiction of the federal court upon removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in federal court it would have had jurisdiction.' Therefore, if the state court lacks the jurisdiction to enforce the subpoenas, the district court will be in no better position than the state court in enforcing the subpoenas once the case is removed to federal court."); *Boron Oil Co. v. Downie,* 873 F.2d 67, 70 (4th Cir.1989) ("The jurisdiction of a federal district court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court, and the federal court acquires none upon removal.... The Supreme Court has instructed that 'jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction.' ").

sideration of the arguments of counsel, the undersigned recommends that the Court find that the decision of the Social Security Administration ("SSA") to not allow the taking of the deposition of Joseph Newton was not arbitrary and capricious. The SSA certainly considered the relevant factors in its determination and in so doing clearly set forth its position that allowing the testimony would unduly burden the agency while at the same time not serving any of its interests. Given the thousands of applications for social security benefits pending in Alabama and the significant backlog of cases, this Court simply cannot find that the agency's belief that allowing Newton's testimony (for even just one hour) would unduly burden it is arbitrary and capricious. This is particularly so where, as here, Liberty National cannot establish that Newton has information regarding Barefield's file that goes to the heart of the central issue in this case [4] nor that Newton has information about SSA procedure that has not been supplied by the state agency deponent or cannot be gained from SSA documents obtained through the corporation's pending FOIA request. *Cf. Stacey v. Caterpillar, Inc.*, 901 F.Supp. 244, 247 (E.D.Ky.1995) ("Where a party's interests in discovery of information held by the government or a government official outweigh the unique interests of the government, then section 301 must yield to discovery in the appropriate manner.... Although the Court appreciates the legitimate and important interest of MSHA in shielding its employees from becoming involved in time consuming discovery so that they may properly do their jobs, in this instance that interest is outweighed by Caterpillar's need to obtain **this critical information which is otherwise unavailable.**").[5] Finally, this Court cannot find the SSA's wish to remain impartial in a lawsuit pitting private litigants in the least bit arbitrary and capricious. *Crowther, supra*, 572 F.Supp. at 290 ("The policy behind

prohibition of testimony is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business.").

## CONCLUSION

In light of the foregoing, the Magistrate Judge recommends that the Court **DENY** Liberty National's motion to compel the deposition testimony of Joseph R. Newton, Jr. (Doc. 1).

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "State-

---

4. In the undersigned's opinion, testimony from Newton that the Barefields likely or may have signed forms assigning to Medicaid any private health insurance benefits available to them would not promote Liberty National's position in the state case any more than the forms available to the corporation through its FOIA request or by Internet search.

5. As heretofore indicated, there is no evidence suggesting that the information Liberty National hopes to gain from Newton is critical but even more importantly, there has been no showing that this information is unavailable through the corporation's pending FOIA request or by simply searching the Internet for the desired forms.

ment of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

**2.** *Transcript (applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Dated: May 27, 2003.