HOUSTON BUSINESS JOURNAL, INC. and Dee Gill, Individually, Appellants,

v.

OFFICE OF the COMPTROLLER OF the CURRENCY, UNITED STATES DEPARTMENT OF the TREASURY, Appellee.

No. 95–5273.

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1996.

Decided June 21, 1996.

Richard S. Hoffman, Washington, D.C., argued the cause for appellants, with whom Max Stier was on the briefs.

Ernest C. Barrett, III, Assistant Director, Office of the Comptroller of the Currency, United States Department of the Treasury, argued the cause for appellee, with whom L. Robert Griffin, Director, was on the brief. Julie L. Williams entered an appearance.

Before: SILBERMAN, BUCKLEY and ROGERS, Circuit Judges.

Opinion of the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant Houston Business Journal, Inc., ("Journal") appeals from the denial of its motion to compel the production of documents from the Office of the Comptroller of the Currency ("Comptroller"). The Journal seeks to use the documents in a libel action in Texas state court in which the Journal is the defendant and the Comptroller is not a party. Because the Journal had already failed in its efforts to compel the production of the documents at issue in federal district court in Texas and before the Fifth Circuit, the district court ruled that the Journal was barred by the doctrine of issue preclusion. We affirm on the ground that the district court lacked subject-matter jurisdiction.

## I.

On December 26, 1988, the Journal published a story, written by Dee Gill, alleging various financial improprieties by Houston banker Al Fairfield. Fairfield then sued the Journal and Gill in the 269th Judicial District Court of Harris County, Texas. *Fairfield v. Houston Business Journal, Inc.*, No. 89–54189 (filed Dec. 19, 1989). In order to establish the affirmative defense of truth of the statements published, the Journal sought to obtain from the Comptroller documents relating to the examination of Fairfield's banks. On July 7, 1992, the Journal served a subpoena *duces tecum* on James Jones, an official in the Comptroller's office in Houston. The Comptroller responded by a letter of July 17, 1992, informing the Journal that it should request documents through the agency's administrative request procedure, pursuant to 12 C.F.R. § 4.19 (1995),[1] rather than by state-court subpoena.

After the exchange of several more letters, the Comptroller issued a letter decision on March 15, 1993, which released certain documents to the Journal but withheld others. The Comptroller stated that all of his documents regarding Fairfield's banks were protected by the bank-examination privilege and informed the Journal that its letter decision

---

1. The Comptroller's regulation provided that:
   Employees or former employees of the Comptroller of the Currency are prohibited from testifying in court or otherwise with respect to information obtained in or resulting from their official capacities and are prohibited from furnishing documents of the Comptroller or copies thereof in compliance with a subpoena, order or otherwise, without the prior written authorization of the Comptroller. If the testimony of or the production of documents by an employee or former employee of the Comptroller is desired, an affidavit by the litigant or his attorney, setting forth the interest of the litigant and the testimony or documents desired must be submitted to the Comptroller before authorization will be granted. The employee's or former employee's authori-

   zation to testify or produce is limited to the authority granted by the Comptroller. When authorization to testify or to produce documents has not been granted by the Comptroller, the employee or former employee to whom a subpoena or order has been directed shall appear in court and respectfully state that he is unable to comply further with the subpoena or order by reason of this section.
   12 C.F.R. § 4.19 (1995). This regulation, like similar regulations issued by other federal agencies, was adopted under the authority of 5 U.S.C. § 301 (1994) ("Federal Housekeeping Statute"). Effective January 1, 1996, this regulation was superseded. 60 Fed.Reg. 57,315, 57,327–31 (Nov. 15, 1995) (to be codified at 12 C.F.R. §§ 4.31–4.39 (1996)).

was "final agency action" for purposes of the Administrative Procedure Act (APA), 5 U.S.C. § 704. Dissatisfied with the Comptroller's limited document production, the Journal obtained from the Texas state court on June 7, 1993, an order to compel the production of the documents based on the Journal's subpoena *duces tecum.*

The Comptroller did not comply with the state court's order and instead removed that part of the state-court action relating to the enforcement of the subpoena to the United States District Court for the Southern District of Texas. In federal district court, the Journal added claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the APA, 5 U.S.C. § 706. The district court granted the Comptroller's motion to quash the subpoena because "it is clear that federal sovereign immunity precludes the state court from enforcing the subpoena." *Fairfield v. Houston Business Journal, Inc.,* Civ. No. H–93–1794, 1993 WL 742740 (S.D.Tex. Sept. 8, 1993). The court denied the motion to compel under FOIA because the Journal had failed to file a FOIA request.[2] Finally, the court denied the motion to compel under the APA because "the [Comptroller's] decision was not arbitrary and capricious or contrary to law." *Id.* Reviewing the factors for the bank-examination privilege that we set forth in *In re Subpoena Served Upon Comptroller of Currency,* 967 F.2d 630, 634 (D.C.Cir.1992) (*Fleet Bank*) (quoting *In re Franklin Nat'l Bank Secs. Litig.,* 478 F.Supp. 577, 583 (E.D.N.Y.1979)), the court upheld the Comptroller's decision to withhold certain documents. The Journal appealed to the Fifth Circuit, which affirmed without opinion. *Fairfield v. Houston Business Journal, Inc.,* No. 93–2842, 35 F.3d 562 (5th Cir.1994) (table).

Thereafter, the Journal came to the United States District Court for the District of Columbia and served a federal subpoena *duces tecum* on the Comptroller. Again, the Comptroller did not turn over the documents, and the Journal moved to compel production of the documents. The district court denied the motion to compel on the ground that the Journal was "barred by the doctrine of issue preclusion from relitigating [its] motion to compel in this Court." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,* Misc. No. 95–167 (D.D.C. July 21, 1995).

## II.

On appeal, the Journal contends that collateral estoppel, or issue preclusion, does not apply. The Journal maintains that the federal district court in Texas decided a different issue from that before the district court here: not whether the requested documents are covered by the bank-examination privilege, but instead whether the Comptroller's decision that the requested documents are not covered by the bank-examination privilege was arbitrary and capricious. In particular, the Journal points to the different standards of review in an APA action and a subpoena enforcement action. The Comptroller contends that collateral estoppel applies because the identical issue—the Comptroller's invocation of the bank-examination privilege—was actually decided in federal court in Texas as the Journal asked the district court in the District of Columbia to decide.

■ We do not reach the issue of collateral estoppel because we conclude that the district court lacked subject-matter jurisdiction to hear the motion to compel. Although the Comptroller does not raise lack of jurisdiction, the court may raise questions of the federal courts' subject-matter jurisdiction *sua sponte. Insurance Corp. v. Compagnie des Bauxites de Guinée,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

■ When a litigant seeks to obtain documents from a non-party federal governmental agency, the procedure varies depending on whether the underlying litigation is in federal or in state court. In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. Under Fifth Circuit law, which the Texas district court

---

2. Under FOIA, matters "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions" are exempt from disclosure. 5 U.S.C. § 552(b)(8).

followed, because a federal court's jurisdiction upon removal is derivative of the state court's, the federal court in a removed action is also barred from enforcing a subpoena against the federal government. *Louisiana v. Sparks,* 978 F.2d 226, 234–36 (5th Cir. 1992).[3] Moreover, a court cannot enforce a subpoena against an employee of the federal governmental agency when the agency has validly enacted a regulation, such as 12 C.F.R. § 4.19 (1995), that withdraws from employees the power to produce documents. *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 467–69, 71 S.Ct. 416, 419–20, 95 L.Ed. 417 (1951); *id.* at 472–73, 71 S.Ct. at 421–22 (Frankfurter, J., concurring).[4] Thus, a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations, as indeed the Journal did. If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA. *See Edwards,* 43 F.3d at 314; *In re Boeh,* 25 F.3d at 764 n. 3.[5]

■ A federal-court litigant, on the other hand, can seek to obtain the production of documents from a federal agency by means of a federal subpoena. In federal court, the federal government has waived its sovereign immunity, *see* 5 U.S.C. § 702, and neither the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court. *Exxon Shipping,* 34 F.3d at 777–78. To the extent that the Comptroller's regulation, 12 C.F.R. § 4.19 (1995), may be to the contrary,

it conflicts with Federal Rule of Civil Procedure 45 and exceeds the Comptroller's authority under the Housekeeping Statute. *See In re Bankers Trust Co.,* 61 F.3d 465, 469–71 (6th Cir.1995), *cert. dismissed,* —— U.S. ——, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996). Accordingly, in past cases in which a federal-court litigant has come to federal district court in the District of Columbia to enforce a subpoena *duces tecum* against the Comptroller, this court has held that the district court owes no deference to the Comptroller in ruling on whether the documents are covered by the bank-examination privilege. *See Schreiber v. Society for Sav. Bancorp, Inc.,* 11 F.3d 217, 220–21 (D.C.Cir. 1993); *Fleet Bank,* 967 F.2d at 633–34.

■ The instant appeal presents a novel question: when the underlying litigation is in state court, can a litigant eager to avoid the limitations on the state court's subpoena power obtain a federal-court subpoena instead? We hold that in such circumstances the federal court lacks subject-matter jurisdiction to issue the subpoena.

The procedures for obtaining a subpoena in federal court are set forth in Rule 45. The Rule provides that a subpoena *duces tecum* "shall issue from the court for the district in which the production or inspection is to be made." FED.R.CIV.P. 45(a)(2). Any motion to quash or modify a subpoena, such as when the party on whom the subpoena is served asserts a privilege, is decided by the issuing court, not the court before which the underlying action is pending. *Id.* R. 45(c)(3)(A).

---

**3.** This position has also been taken by at least three other circuits, *see Edwards v. United States Dep't of Justice,* 43 F.3d 312, 315 (7th Cir.1994); *Exxon Shipping Co. v. United States Dep't of Interior,* 34 F.3d 774, 778 (9th Cir.1994); *Boron Oil Co. v. Downie,* 873 F.2d 67, 70 (4th Cir.1989), as well as by district courts in this circuit, *see Sharon Lease Oil Co. v. FERC,* 691 F.Supp. 381 (D.D.C.1988); *Environmental Enters., Inc. v. EPA,* 664 F.Supp. 585 (D.D.C.1987). The United States has waived its immunity for "[a]n action in a court of the United States seeking relief other than money damages." 5 U.S.C. § 702 (1994).

**4.** Under *Touhy,* neither state-court nor federal-court litigants may obtain a subpoena *ad testificandum* against an employee of a federal agency that has enacted a *Touhy* regulation. *See In re*

*Boeh,* 25 F.3d 761, 763–67 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). In that situation, the litigant must proceed under the APA, and the federal court will review the agency's decision not to permit its employee to testify under an "arbitrary and capricious" standard. *Moore v. Armour Pharmaceutical Co.,* 927 F.2d 1194, 1197 (11th Cir. 1991); *Davis Enters. v. EPA,* 877 F.2d 1181, 1186 (3d Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990).

**5.** It may also be possible for the litigant to bring an action in federal court for mandamus against the agency head. *In re Boeh,* 25 F.3d at 764 n. 3. *But see Giza v. Secretary of Health, Educ. & Welfare,* 628 F.2d 748, 752 (1st Cir. 1980).

In the instant appeal, however, the court in which the underlying action is pending is not another federal district court but rather a Texas state court.

In *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) (*Catholic Conference*), the Supreme Court held that a non-party served with a subpoena *duces tecum* could defend a civil-contempt adjudication for non-compliance with the subpoena by challenging the federal court's subject-matter jurisdiction in the underlying suit. The Court reasoned that

> Federal Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses and documents, but the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void.... As we observed in *United States v. Morton Salt Co.*, 338 U.S. 632, 642 [70 S.Ct. 357, 363, 94 L.Ed. 401] (1950), "[t]he judicial subpoena power not only is subject to specific constitutional limitations, ... but also is subject to those limitations inherent in the body that issues them because of the provisions of the Judiciary Article of the Constitution."

487 U.S. at 76, 108 S.Ct. at 2270. If a district court lacks jurisdiction to issue a subpoena when a federal court has erroneously asserted jurisdiction over the underlying action, as *Catholic Conference* holds, it follows that the district court is similarly. without power to issue a subpoena when the underlying action is not even asserted to be within federal-court jurisdiction.

■ Although we have uncovered no case deciding this question, this result is compelled by the limitations on the role of discovery in federal court.[6] The federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others. Rather, the discovery devices in federal court stand available to facilitate the resolution of actions cognizable in federal court. *Cf. Hickman v. Taylor*, 329 U.S. 495, 500–01, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947) (purposes of discovery rules). Article III of the Constitution limits the federal courts' subpoena power to cases where a federal court has subject-matter jurisdiction over the underlying action, or in certain circumstances where an action is cognizable in federal court, *cf.* FED.R.CIV.P. 27(a), or where the subpoena is "necessary for the court to determine and rule upon its own jurisdiction, including jurisdiction over the subject matter." *Catholic Conference*, 487 U.S. at 79, 108 S.Ct. at 2272.

■ Thus, in the instant case the district court lacked jurisdiction to issue a subpoena in aid of the Journal's defense of the libel action against it in Texas state court. In general, a state-court litigant seeking to compel a non-party to produce documents must use the state court's subpoena power or, if the non-party is beyond the jurisdiction of such court, use whatever procedures another state may provide. *See, e.g.*, UNIF. INTERSTATE & INT'L PROC. ACT § 3.02(a), 13 U.L.A. 355, 391–92 (1986) (promulgated 1962).[7] When the documents are sought from a federal agency, however, the proper procedure is to make an administrative request, from which review may be had under the APA. In any event, the subpoena enforcement power of the federal courts is unavailable in such circumstances.[8]

---

6. Commentators have assumed this result. *See* FRIEDENTHAL, KANE & MILLER, CIVIL PROCEDURE § 7.7, at 399 & n.26 (2d ed. 1993).

7. *See also* Rhonda Wasserman, *The Subpoena Power: Pennoyer's Last Vestige*, 74 MINN. L.REV. 37, 160–62 (1989) (surveying state statutes); Timothy L. Mullin, Jr., *Interstate Deposition Statutes: Survey and Analysis*, 11 U. BALT. L.REV. 1, 46–52 (1981) (same).

8. The Journal did not invoke D.C.Code § 14-103, which provides that:
   > When a commission is issued or notice given to take the testimony of a witness found within the District of Columbia, to be used in an action pending in a court of a State, territory, commonwealth, possession, or place under the jurisdiction of the United States, the testimony may be taken by leave of a judge of the United States District Court in like manner and with like effect as other depositions are taken in

Accordingly, we affirm the order denying the Journal's motion to compel.

United States district courts, or by leave of a judge of the Superior Court of the District of Columbia in the manner prescribed by the rules of that court.

D.C.CODE ANN. § 14–103 (1995). Section 14–103, which was enacted in 1963, Pub.L. No. 88–241, 77 Stat. 478, 518 (1963), is derived from similar statutes that can be traced back to 1869. *See* Act of Mar. 3, 1869, ch. 128, 15 Stat. 324; Act of Mar. 3, 1901, ch. 854, § 1062, 31 Stat. 1189, 1357, *amended by* Act of June 30, 1902, ch. 1329, 32 Stat. 520, 540, *repealed by* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 995; Act of May 24, 1949, ch. 139, § 139, 63 Stat. 89, 109, *codified at* D.C.CODE § 14–204 (1951). They reflect the absence of a state-type court system in the District of Columbia. That circumstance changed with the enactment by Congress of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84

Stat. 473. The conforming amendments to § 14–103 gave the newly created Superior Court of the District of Columbia the authority to issue subpoenas in aid of proceedings in state courts, but did not repeal the procedures that had applied in federal court. *Id.* § 143(1), 84 Stat. at 552. Given that the Court Reform Act withdrew from the United States District Court for the District of Columbia its general jurisdiction over most local matters, it appears unlikely that Congress intended § 14–103 to confer subject-matter jurisdiction upon the United States District Court for the District of Columbia that other federal district courts lack. Instead, it seems far more likely that § 14–103 merely specifies the procedures that formerly applied when the federal district court had jurisdiction. *Cf. In re City of El Paso*, 887 F.2d 1103, 1105 (D.C.Cir.1989) (per curiam) (not addressing the above legislative history).