BOUDIN, Chief Judge,
concurring.
It has been long settled that the United States cannot be sued, either in federal court or in any state forum, unless it has waived sovereign immunity. Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). States and comparable entities are treated no differently than any other litigant. Indeed, the lower courts have repeatedly held that, absent a waiver, the United States cannot be forced to obey a subpoena issued by a state court, state grand jury, or state legislative committee.[14]
Puerto Rico’s lawsuit in federal court, seeking to enforce the state’s demand for a turnover of documents and exhibits belonging to or in the custody of the FBI, is itself barred by sovereign immunity unless it falls within an exception — which normally must be created by Congress. This is not an instance of discovery in aid of a federal lawsuit to which the United States has otherwise consented (e.g., a Tucker Act suit against the United States) or to which it is otherwise susceptible to discovery (e.g., a federal criminal prosecution).
So far as Puerto Rico is asserting an implied exception to federal sovereign immunity for state criminal investigations, the proposition is without case support and is at odds with a catalogue of cases. See note 14, above. Puerto Rico is free to conduct criminal investigations. It is not free to bring a federal or state lawsuit to obtain by court process, at the behest of a state agency, documents and exhibits controlled by the United States, unless Congress has so provided.
The United States has waived sovereign immunity in a number of different statutes, including the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (2000) (certain *72 torts), the Tucker Act, id. § 1346(a) (contracts), and the Freedom of Information Act, 5 U.S.C. § 552 (2000) (access to many documents). Puerto Rico does not invoke the FOIA, presumably because one of its exceptions limits requests for criminal investigative materials.[15] 5 U.S.C. § 552.
This leaves Puerto Rico with the Administrative Procedure Act (“APA”), 5 U.S.C. § 702. The APA can be viewed both as a residual waiver of sovereign immunity permitting judicial review of federal action— though not an award of damages — where there is no other prescribed remedy; and as a federal cause of action where an agency acts contrary to law or in a manner that is arbitrary or irrational (unless the matter is one committed to agency discretion by law, id. § 701(a)(2)). See H.R. Rep. 94-1656, at 4-12 (1976).
Puerto Rico points to no law requiring the turnover of the materials it seeks. So far as Puerto Rico asserts its own sovereign interest in law enforcement, this interest creates no cause of action — state or federal — that permits Puerto Rico to constrain the United States. See U.S. Const. Art. VI, cl. 2; McCulloch v. Maryland, 17 U.S.(4 Wheat.) 316, 436, 4 L.Ed. 579 (1819) (“the states have no power ... to retard, impede, burden, or ... control” the execution of federal powers); cf. In re Neagle, 135 U.S. 1, 75, 10 S.Ct. 658, 34 L.Ed. 55 (1890).
Congress has authorized each agency to create housekeeping regulations governing the use of its “records, papers, and property,” 5 U.S.C. § 301, and the Department’s pertinent regulations forbid disclosure of any information where
[disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,
unless the “administration of justice requires disclosure.” 28 C.F.R. § 16.26(b)(5), (c). Yet the Department’s regulations, by their explicit terms, create no substantive rights in litigants, 28 C.F.R. § 16.21(d), and so create no legal obligation enforceable under the APA.
This leaves Puerto Rico, at best, with an APA suit to challenge agency action as arbitrary and capricious. Some courts have recognized an action under the APA to challenge the reasonableness of the agency’s action in withholding documents.[16] Whether this is a plausible claim — given the explicit treatment of document requests under the FOIA — might be debated. But the present case would turn out the same way even if such an *73 APA claim survived the precept lex specials derogat legi generali In re Lazarus, 478 F.3d 12, 19 (1st Cir.2007).
There is nothing arbitrary or capricious about the Department’s policy of refusing to reveal “records compiled for law enforcement purposes” that would “disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.” 28 C.F.R. § 16.26. The Department’s legitimate interest is self-evident and is reflected in both the FOIA categorical exception, see note 15, above, and in judicial recognition of a law enforcement privilege, Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
Nor did the Department act arbitrarily or capriciously in applying its general policy in this case. As the district court found, the materials sought by Puerto Rico and withheld by the Department would reveal the identities of FBI agents, “how the FBI goes about capturing a fugitive who is believed to be dangerous, the number and types of personnel used by the FBI in such operations, the way the FBI collects evidence, the FBI’s internal operating procedures in a variety of law enforcement settings, and the way in which law enforcement information is gathered.” [17]
That in this case the materials might be protected under the federal law enforcement privilege is icing on the cake, but the Department’s action would be reasonable even without the privilege. When the United States tries a defendant in its own courts, no issue of sovereign immunity is presented: disclosure obligations depend on federal criminal rules and precedents and, ordinarily, material in government hands must be produced in response to such requirements or a defense subpoena unless privileged.
By contrast, when Puerto Rico is seeking materials in an action not otherwise properly in federal court, the United States has no independent obligation to turn over government materials regardless of whether they are privileged; at most, it must avoid action that is arbitrary and capricious and can do so on the basis of a reasonable general policy. The Department’s refusal to release the information in this case was not arbitrary and capricious and that is the end of the matter.

. See, e.g., United States v. Williams, 170 F.3d 431, 433 (4th Cir.), cert. denied, 525 U.S. 854, 120 S.Ct. 135, 145 L.Ed.2d 115 (1999); In re Elko County Grand Jury, 109 F.3d 554, 556 (9th Cir.), cert. denied, 522 U.S. 1027, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997) (sovereign immunity bars enforcement of state grand jury subpoena of federal official); Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C.Cir. 1996); State of La. v. Sparks, 978 F.2d 226, 234-35 (5th Cir.1992); Boron Oil Co. v. Downie, 873 F.2d 67, 71 (4th Cir.1989); United States v. McLeod, 385 F.2d 734, 751 (5th Cir.1967); United States v. Owlett, 15 F.Supp. 736, 742 (M.D.Pa.1936).

. The Freedom of Information Act excepts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enfoi'cement records or information (A) could reasonably be expected to interfere with enforcement proceedings, ... (D) could reasonably be expected to disclose the identity of a confidential source ..., (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.” 5 U.S.C. § 552(b)(7).

. "If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA.” Houston Bus. Journal, 86 F.3d at 1212. See also COMSAT Corp. v. Nat’l Sci. Found., 190 F.3d 269, 274 (4th Cir.1999); Williams, 170 F.3d at 434; Edwards v. U.S. Dep't of Justice, 43 F.3d 312, 316-17 (7th Cir.1994); Boron Oil, 873 F.2d at 71; cf. Gen. Elec., 197 F.3d at 598-99, modified on reh’g, 212 F.3d at 690.

. These materials included the "operation order” relating to the FBI raid on Ojeda’s residence; the identities and photographs of the agents involved in the raid and those responsible for using pepper spray; information gathered during the FBI's occupation of Ojeda’s residence; copies of expert reports, photographs, and recordings related to the raid; and internal protocols concerning violent and arrest interventions and use of force.