UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
**HOWARD BLOOMGARDEN,**                             )
                                                    )
    **Plaintiff,**               )
                                                    )
    **v.**                        )    **Civil Action No. 15-0298 (ESH)**
                                                    )
**UNITED STATES DEPARTMENT**                        )
**OF JUSTICE,**                                     )
                                                    )
    **Defendant.**                 )
_____             )

## MEMORANDUM OPINION AND ORDER

Howard Bloomgarden was tried and convicted in 2014 by a California jury of two counts of first-degree murder and two counts of kidnapping for extortion. (*See* Pl.'s Mot. for Summ. J. [ECF No. 17] at 9.) In his quest for a new trial, plaintiff asserts that Los Angeles County prosecutors used evidence that he was fraudulently induced to proffer, and that documents supporting this assertion may be in the possession of the Department of Justice ("DOJ"). (*See id.* at 15 n.43, 34-36.) Plaintiff's administrative demand for the documents—filed pursuant to DOJ's *Touhy* regulations, 28 C.F.R. §§ 16.21 *et seq.*—was formally denied by DOJ in April 2015. (*See* Ex. VV to Pl.'s Mot. for Summ. J. [ECF No. 16] at 2.) Plaintiff has thus filed this suit under the Administrative Procedure Act, 5 U.S.C. § 706, arguing that the *Touhy* denial was both arbitrary and capricious and contrary to plaintiff's constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Compl. [ECF No. 1] ¶¶ 18-22.)

Before the Court is plaintiff's response to a show cause order as to why judgment should not be entered against him. (*See* Pl.'s Show Cause Response [ECF No. 49].) The show cause

was issued after this Court reviewed the documents that were in any way relevant to the Bloomgarden case—and also provided these same documents to the judge in the California proceedings—but neither court found that the documents constituted *Brady* material.  In his response, plaintiff asks this Court to either (1) transmit the remaining undisclosed documents (approximately 1,800 pages) to the California trial court, where they will be kept under seal pending appellate proceedings, or (2) administratively close this action to allow the Court to intervene in the event that the California courts seek additional documents in aid of the resolution of Bloomgarden's motion for a new trial.  (*See id.* ¶¶ 8-9.)  For the reasons that follow, the Court will not transfer the remaining documents, but it will administratively close the case and retain jurisdiction in the event that the California court wants to review additional documents.

## ANALYSIS

Plaintiff seeks to acquire documents from the disciplinary file of a former Assistant United States Attorney (the "former AUSA"), who worked for DOJ in the Eastern District of New York ("EDNY") in the mid-1990s.  (*See* Pl.'s Mot. for Summ. J. at 1, 10-11.)  The disciplinary file relates to his proposed termination, and it consists of a thirty-five page disciplinary letter (the "Letter"), a table of contents, and 3,649 pages of supporting documentation.  (*See* Def.'s Mot. for Summ. J. [ECF No. 29-1] at 5.)

Beginning in January 1995, the former AUSA was the lead prosecutor in a state / federal investigation into certain drug-related crimes, including the kidnapping and murder of Peter Kovach and Ted Gould, which eventually led to plaintiff accepting a guilty plea in the EDNY.  (Pl.'s Mot. for Summ. J. at 1, 7.)  During the course of that investigation, plaintiff agreed with

the former AUSA to engage in proffer sessions with prosecutors, but only after being assured that L.A. County prosecutors were "on board" with the agreement. (*See id.* at 2.) As such, the proffer agreements included both the AUSA's signature and a "/s/" symbol preceding the L.A. prosecutor's name, to indicate that the AUSA had signed on her behalf. (*See* Ex. G to Pl.'s Mot. for Summ. J.) In relevant part, the proffer agreements read:

> (1) In any prosecution brought against [Bloomgarden] by the EDNY or the Los Angeles County District Attorney's Office ("LACDA"), neither the EDNY nor the LACDA will offer into evidence in its case-in-chief or at sentencing any statements made by [Bloomgarden] at the meeting, except in a prosecution for false statements, obstruction of justice, or perjury.
>
> (2) Notwithstanding item (1) above: (a) the EDNY and the LACDA may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence that may be used in any prosecution and sentencing of [Bloomgarden] by the EDNY or the LACDA . . . .

(*Id.*)

Pursuant to these agreements, plaintiff offered inculpatory information, but later he was told that the former AUSA lacked authorization to sign the agreements on behalf of the L.A. County prosecutor. (*See* Pl.'s Mot. for Summ. J. at 3, 5.)[1] By this time, the former AUSA had been removed from plaintiff's case, and the EDNY U.S. Attorney's Office had initiated termination proceedings against him. (*See id.* at 4.) Upon taking over the case, the former AUSA's replacement repudiated any possible federal plea agreement or use of Bloomgarden as a cooperating witness. (*Id.*) Plaintiff's expectation of a plea agreement with L.A. County prosecutors also never came to fruition—he ultimately pled guilty to federal charges and was

---

[1] The L.A. County prosecutor has since stated that she can no longer remember whether she authorized the signature. (*See* Ex. FF to Pl.'s Mot. for Summ. J. [ECF No. 13] at 9.)

later transferred to an L.A. County jail in 2005 to face charges in the Kovach-Gould murders. (*See id.* at 4, 7-8.)

In pretrial proceedings in Los Angeles Superior Court before the Honorable Curtis Rappe, Bloomgarden successfully argued for suppression of his federal plea agreement and allocution, in which he had implicated himself in the Kovach-Gould murders. (*See id.* at 7-8.) Judge Rappe found that Bloomgarden's lawyers had rendered ineffective assistance of counsel by failing to apprise him of his continued exposure to state murder charges. (*See id.* at 8; Ex. Y to Pl.'s Mot. for Summ. J. [ECF No. 12] at 872, 947-48.) He also argued that the former AUSA's unauthorized signature warranted suppression of all evidence of prior bad acts that had been derived from the proffer sessions. (*See* Pl.'s Mot. for Summ. J. at 8; Ex. FF to Pl.'s Mot. for Summ. J. at 4-5.) Judge Rappe agreed in part, ruling that the prosecutors would be held to the terms of the agreements that prohibited direct use of plaintiff's statements against him, just as if their predecessor's signature had been authorized. (*See id*. at 17.) In other words, Judge Rappe assumed that the former AUSA signed without authorization, and he gave plaintiff the "benefit of [his] bargain" as a remedy. (*See id.*) Judge Rappe did leave open the possibility that greater relief might be warranted if Bloomgarden could show a "scam operation" or "nefarious plot" by state and federal prosecutors to defraud him.[2] (*See id.* at 17-18.) He also suggested that if the AUSA's disciplinary file showed that DOJ terminated him "because, voila, they had evidence that he just scammed Mr. Bloomgarden," then that could constitute *Brady* material. (*See id.* at 16.)

---

[2] In effect, plaintiff seeks to be restored to the *status quo ante*, arguing that the government's alleged fraud vitiates the proffer agreements entirely, thus warranting suppression of even derivative evidence that would have otherwise been admissible under the agreements. (*See* Ex. FF to Pl.'s Mot. for Summ. J. at 15-18.)

Given that opening, plaintiff now presses his claims before this Court. He filed a FOIA

case (12-cv-843) seeking the former AUSA's disciplinary file, and this administrative *Touhy*

action seeking "[a]ll favorable, impeaching, mitigating, or exculpatory materials . . . including

under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and

their progeny, contained within" the same file.[3] (*See* Ex. SS to Pl.'s Mot. for Summ. J.) In an

accompanying letter, plaintiff clarified that he sought "evidence of prosecutorial misconduct or

fraud on the part of state or federal prosecutors" who investigated him, for use in defending

against the California charges.[4] (*See id.*) DOJ denied the *Touhy* request, citing the former

AUSA's right to privacy under the Federal Privacy Act of 1974, 5 U.S.C. § 552a, and noting that

plaintiff had made "no showing that any statutory exceptions to the prohibition against disclosure

apply here." (*See* Ex. VV to Pl.'s Mot. for Summ. J.) In response, plaintiff has argued that this

denial was both arbitrary and capricious and contrary to his constitutional rights under *Brady*.

(*See* Pl.'s Mot. for Summ. J. at 33-39.)

The Court has already ruled that plaintiff can rely on *Touhy* procedures—and judicial

review of any *Touhy* denial under the APA—to seek *Brady* material. (*See* Nov. 4, 2015 Hearing

Tr. [ECF No. 37] at 11:2-10; *see also Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002)

("[T]he Administrative Procedure Act provides an appropriate procedure for judicial review of a

---

[3] The so-called *Touhy* action derives from the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). That decision affirmed DOJ's authority under the federal Housekeeping Statute, now codified at 5 U.S.C. § 301, to promulgate regulations governing requests for the disclosure of documents within DOJ's custody. *See Touhy*, 340 U.S. at 468-69. When an agency denies an administrative demand made pursuant to these *Touhy* regulations, the denial is reviewable under the APA. *See Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

[4] For purposes of this discussion, the Court assumes that evidence of prosecutorial misconduct is producible under *Brady*.

decision by a federal agency to withhold investigation materials from a state criminal defendant, in which the state criminal defendant can proffer any perceived rights to the file materials under the constitutional principles set forth in *Brady* and its progeny.").  It also ruled that the Privacy Act would be no impediment to disclosure if plaintiff could show a constitutional right to the material under *Brady*.  (*See* Nov. 4, 2015 Hearing Tr. at 10:14-15.)  However, the Court also recognized the inherent difficulty of a federal court making *Brady* determinations with regard to a state trial over which it did not preside.  (*See id.* at 6:22-7:3.)

The Court reviewed *in camera* the Letter, the table of contents, and any supporting exhibit that mentioned any of Bloomgarden's co-defendants, but it did not find any documents that implicated *Brady*.  (*See* Mar. 4, 2015 Hearing Tr. [ECF No. 45, Case No. 12-cv-843] at 37:21-22; Nov. 4, 2015 Hearing Tr. at 14:24-15:20; 16:24-17:10.)  Nevertheless, out of an abundance of caution, the Court obtained the parties' agreement to send all conceivably relevant documents to Judge Rappe under seal, so that he could determine whether any should be produced to Bloomgarden.  (*See* Nov. 4, 2015 Hearing Tr. at 20:18-21:10; 24:16.)  As part of that agreement, Judge Rappe would disclose to plaintiff any *Brady* material he identified (*see id.* at 10:20-11:1), and in return, plaintiff agreed, among other things, to forego his remaining *Touhy* claims.  (*See id.* at 20:18-21:10; *see also* Pl.'s Show Cause Reply [ECF No. 51] ¶ 2).  Plaintiff also agreed to seek return of the documents to this Court at the close of proceedings in California.  (*See* Jan. 5, 2016 Hearing Tr. at 5:10-19.)  Finally, when mailing the documents to California, the Court informed Judge Rappe that it was willing to send him any other documents listed in the table of contents that he wanted to review.  (*See* Ex. A to Def.'s Mot. for Clarification [ECF No. 84-1, Case No. 12-cv-843].)  However, no such request has been received.

6

At a January 22, 2016 hearing, Judge Rappe stated that the documents he reviewed were "very general and conclusory and [he] find[s] no *Brady* material in that." (Ex. A to Pl.'s Show Cause Response [ECF No. 49-1] at 6210:23-24; *see id.* at 6215:15-16 (Judge Rappe: "No, I'm not going to release anything from the 35-page letter or the exhibits.").) This finding confirmed the Court's tentative ruling, particularly because plaintiff's name was not mentioned anywhere in the disciplinary file. (*See* Nov. 4, 2015 Hearing Tr. at 19:21-20:11; *see also* Luczynski/Gerson Aff. [ECF No. 102-1, Case No. 12-cv-843] ¶ 3 (affirming that any document relating to plaintiff or any of his co-defendants has been produced either to plaintiff or the Court).) Moreover, the Court has reviewed *in camera* every document that makes any mention of Bloomgarden's co-defendants, and there is no suggestion of prosecutorial misconduct in these documents either.[5] However, Judge Rappe did allow that his ruling could change if Bloomgarden's forthcoming motion for a new trial were to persuade him that Bloomgarden is entitled to greater relief than he has already received. (*See* Ex. A to Pl.'s Show Cause Response at 6211:18-26, 6217:12-22.)

Accordingly, this Court ordered plaintiff to show cause as to why judgment should not be entered against him. (*See* Feb. 3, 2016 Minute Order.) Plaintiff's response emphasizes that Judge Rappe's ruling is only tentative. (*See* Pl.'s Show Cause Response ¶ 4.) He also argues that, even if the tentative *Brady* ruling is not reversed, the Court should transmit to Judge Rappe the approximately 1,800 pages of documents in the disciplinary file that were not produced to

---

[5] In total, the Court and Judge Rappe have reviewed the Letter, the table of contents, and six supporting documents from the disciplinary file. (*See* Nov. 4, 2015 Hearing Tr. at 26:3-8.) DOJ later submitted for *in camera* review seven additional pages that mentioned in passing Bloomgarden's co-defendants. As the Court informed the parties in a January 11, 2016 email, none of the later-submitted pages could even remotely be considered *Brady* material in plaintiff's California trial.

plaintiff in his related FOIA case in order to preserve them for a potential California appeal.[6] (*See id.* ¶¶ 4-5, 8.)  In the alternative, he asks the Court to administratively close this action but allow it to be re-opened in the event that a California court requests further documents.  (*See id.* ¶ 9.)  DOJ objects to both requests and argues that judgment should now be entered in its favor. (*See* Def.'s Objection [ECF No. 50] at 1-2.)  Bloomgarden responds that DOJ is not entitled to judgment in its favor, arguing primarily that Judge Rappe has not definitively ruled and has left open the possibility of seeking additional documents.  (*See* Pl.'s Reply Br. ¶¶ 2-3.)  He also seems to argue that he did not waive his other *Touhy* argument—that the denial was arbitrary and capricious—as part of the agreement that was reached with the Court at the hearing on November 4, 2015.  (*See id.* ¶ 2.)

While the Court does not necessarily agree with Bloomgarden's interpretation of the agreement that was reached in open court, especially with respect to what issues remain to be decided and by which court, it does agree that it is not appropriate at this time to enter final judgment on defendant's behalf given Judge Rappe's reservation of a final ruling.  (*See* Ex. A to Pl.'s Show Cause Response at 6210:25-26.)  Nor is it necessary or sensible to transfer to Judge Rappe the 1,800 pages of documents that have not been produced to plaintiff or reviewed by this Court or the California court.  This case can only be ultimately determined by a federal court in this jurisdiction, and it was never this Court's intent to burden the state court with voluminous

---

[6] In the FOIA case, the Court has already ruled that the Letter is protected from disclosure under 5 U.S.C. § 552(b)(6) (*see* Feb. 5, 2016 Mem. Op. [ECF No. 106, Case No. 12-cv-843]), but it ordered production of all public documents (approximately 1,800 pages) including those originally filed under seal.  (*See* Nov. 4, 2015 Minute Order; Jan. 5, 2016 Order [ECF No. 100, Case No. 12-cv-843]).  Furthermore, the Court has ordered DOJ to provide a Vaughn Index detailing the remaining 1,800 undisclosed pages on or before April 1, 2016.  (*See* Feb. 17, 2016 Order [ECF No. 110, Case No. 12-cv-843].)

records. As correctly observed by Judge Rappe, "I'm not going to start delving into additional documents. That's really not my role." (*See id.* at 6226:5-6.)

At this time, however, the Court is willing to administratively close this case but retain jurisdiction in the event that Judge Rappe is persuaded to change his mind and request additional material relevant to either the motion for new trial or to sentencing. Defendant will retain all documents from the disciplinary file that have not been produced to plaintiff pending further order of this Court, and plaintiff shall notify this Court as soon as Bloomgarden has been sentenced in California. At that time, it will be determined what further action, if any, is necessary in order to terminate this case.

In light of the foregoing, it is hereby

**ORDERED** that plaintiff's request to transfer the remaining undisclosed documents to Judge Rappe is **DENIED**. It is further

**ORDERED** that plaintiff's request that the Court administratively close this action is **GRANTED IN PART**, to the extent that this Court will retain jurisdiction at least until such time as Mr. Bloomgarden is sentenced. This will ensure that any arguably *Brady* documents that are requested by Judge Rappe will be provided accordingly. It is further

**ORDERED** that plaintiff shall notify the Court as soon as he has been sentenced in California. It is further

**ORDERED** that defendant shall retain all remaining undisclosed documents in the disciplinary file pending further order of the Court. It is further

**ORDERED** that the Clerk shall administratively close this case forthwith pending further order of the Court.

9

                                        _____/s/_____
                                        ELLEN SEGAL HUVELLE
                                        United States District Judge

Date: March 2, 2016